406 S.E.2d 65

**CITIZEN AWARENESS REGARDING EDUCATION, an unincorporated association registered with the Office of the Clerk of the County Commission of Calhoun County as a PAC, Appellee,**

v.

**CALHOUN COUNTY PUBLISHING, INC., a corporation, Appellant.**

No. 19898.

Supreme Court of Appeals of West Virginia.

Submitted May 15, 1991.

Decided June 6, 1991.

---

5. By contrast, when the dealer owns it and has it on his lot to sell, it is inventory.

Rebecca A. Baitty, DiTrapano & Jackson, Charleston, for appellant.

NEELY, Justice:

This is an appeal by Calhoun County Publishing, Inc. of the Calhoun County Circuit Court's injunction compelling it to accept and print a paid political advertisement submitted by a local political action committee. We hold that the lower court's injunction violated the federal guarantee of a free press contained in *U.S. Const.*, amend. I,[1] and our own guarantee of a free press contained in *W.Va. Const.*, art. III, § 7.[2]

Appellant Calhoun County Publishing, Inc., publishes a weekly newspaper, the *Calhoun Chronicle*, in Calhoun County, West Virginia. Appellee Citizen Awareness Regarding Education (hereinafter

---

**1.** *U.S. Const.*, amend. I, provides:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

**2.** *W.Va. Const.*, art. III, § 7, provides:

No law abridging the freedom of speech, or of the press, shall be passed; but the legislature may by suitable penalties, restrain the publication or sale of obscene books, papers, or pictures, and provide for the punishment of libel, and defamation of character, and for the recovery, in civil actions, by the aggrieved party, of suitable damages for such libel, or defamation.

"CARE") is a political action committee formed to oppose a school bond levy that was scheduled for a vote at the 8 May 1990 primary election.

In its 12 April, 19 April, and 26 April editions, the *Calhoun Chronicle* published several paid political advertisements placed by CARE. However, when CARE attempted to place an advertisement in the 3 May 1991 edition, the newspaper refused to print it, because the newspaper apparently had a policy of not publishing any political advertisements in the last issue before an election.

On 1 May 1990, CARE filed a complaint and motion for mandatory injunction in the Circuit Court of Calhoun County, seeking an order compelling the newspaper to publish CARE's advertisement. Several hours after the filing of the complaint and motion, the circuit judge conducted a hearing on CARE's complaint.

The newspaper was unable to procure counsel before the proceeding. At the hearing, CARE's counsel candidly admitted that she could not cite any cases to support CARE's position:

> I have brought this forward out of a gut sense, my arguments are based on decency and fair play and basic sense of Constitutional Law. I really cannot site [sic] any cases because of the shortness of notice and the pressure under which I had to prepare this work.

The court, likewise, noted the lack of authority for compelling the newspaper to print the advertisement, yet granted the injunction CARE requested, apparently on the same gut sense.

## I.

■ As a threshold matter, it should be noted that although this case is technically moot because the advertisement has been run and the election is over, we can still address it, because, as we said in Syllabus Point 1 of *Means v. Sidiropolis*, 184 W.Va. 514, 401 S.E.2d 447 (1990):

> This Court, in its discretion, may decide a case that is technically moot if the issue presented by the case can be repeatedly presented to the trial court yet escape

review at the appellate level because of its fleeting and determinate nature.

■ Although CARE's counsel had only a short time to search for precedent, the fact is that there exists no support for the injunction CARE sought. The United States Supreme Court announced the law governing this case in *Miami Herald Publishing Company v. Tornillo*, 418 U.S. 241, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974), in which the Court reaffirmed the First Amendment's guarantee of a free press. This fact may explain why CARE has submitted no brief, and no oral argument was had in this proceeding.

In *Miami Herald*, the Supreme Court struck down a Florida "right-of-access" statute that required any newspaper that assailed a candidate for election to give free space to the candidate for his rebuttal. The Court examined the various arguments for "right-of-access" provisions, but ultimately found that any right-of-access provision would run afoul of the First Amendment's protection of freedom of the press:

> However much validity may be found in these arguments, at each point the implementation of a remedy such as an enforceable right of access necessarily calls for some mechanism, either governmental or consensual. If it is governmental coercion, this at once brings about a confrontation with the express provisions of the First Amendment and the judicial gloss on that Amendment developed over the years.

418 U.S. at 254, 94 S.Ct. at 2838. In the final paragraph of the majority opinion, the Court left no doubt about the boundaries of the press's freedom with regard to deciding what to print and what not to print:

> Even if a newspaper would face no additional costs to comply with a compulsory access law and would not be forced to forgo publication of news or opinion by the inclusion of a reply, the Florida statute fails to clear the barriers of the First Amendment because of its intrusion into the function of editors. A newspaper is more than a passive receptacle or conduit for news, comment, and advertising. The choice of material to go into a news-

paper, and the decisions made as to limitations on the size and content of the paper, and treatment of public issues and public officials—whether fair or unfair—constitute the exercise of editorial control and judgment. It has yet to be demonstrated how governmental regulation of this crucial process can be exercised consistent with First Amendment guarantees of a free press as they have evolved to this time.

418 U.S. at 258, 94 S.Ct. at 2839–2840.

If the trial court or CARE's lawyer felt that there might be some precedent for the injunction, perhaps they vaguely recalled the case of *United Mine Workers of America v. Parsons*, 172 W.Va. 386, 305 S.E.2d 343 (1983), which involved radio broadcasts produced by the Department of Intercollegiate Athletics at West Virginia University. In Syllabus Point 1 of that case, we said:

When a *state agency or instrumentality* sells advertising for broadcast which presents one side of a politically controversial issue of public concern, it is obligated under W.Va. Const. art. III, § 3 and art. III, § 7, to preserve its neutrality by providing a reasonable opportunity for the presentation of contrasting points of view in order that the "common benefit, protection and security" be served and fundamental fairness preserved. [Emphasis Added.]

Even when announcing this rule, the court specifically recognized that under *Miami Herald v. Tornillo*, the same "right-of-access" rule could not be applied to a private newspaper.

In short, government can never compel a private newspaper to print anything, without violating the First Amendment's guarantee of a free press.

We hold that *W.Va. Const.*, art. III, § 7, was intended to provide at least as much protection to the press as the First Amendment to the *Constitution of the United States* provides. Therefore, the circuit court's injunction violated our state constitution's guarantee of a free press, as well.

For the reasons given above, we find that the lower court erred in granting

CARE's motion compelling Calhoun Publishing to print CARE's political advertisement. Therefore, the lower court's decision is reversed.

Reversed.