549 S.E.2d 591

Kenneth E. CURTIS, Individually and d/b/a
Privacy Protection Services, Appellant,

v.

The STATE of South Carolina, The South Carolina General
Assembly, Charles Molony Condon, as Attorney General for the
State of South Carolina, Robert M. Ariail, as 13th Judicial
Circuit Solicitor, The South Carolina Law Enforcement Divi-
sion, and Johnny Mack Brown, as Sheriff for Greenville Coun-
ty, Respondents.

No. 25319.

Supreme Court of South Carolina.

Heard Oct. 4, 2000
Decided July 17, 2001
Rehearing Denied Aug. 10, 2001.

558

560

564

Robert C. Childs, III and Laura W.H. Teer, both of Mitchell, Bouton, Yokel & Childs, of Greenville, for appellant.

Attorney General Charles M. Condon, Senior Assistant Attorney General Nathan Kaminski, Jr., and Assistant Attorney General Christie Newman Barrett, all of Columbia, for respondents.

TOAL, Chief Justice:

Kenneth E. Curtis ("Curtis") appeals the trial court's denial of a temporary injunction concerning the enforcement of S.C.Code Ann. § 16–13–470 (Supp.2000), which prohibits the selling of urine with the intent to defraud a drug screening test. We affirm.

## FACTS/PROCEDURAL HISTORY

In 1996, Curtis started an internet business known as Privacy Protection Services.[1] Through this business, Curtis sells his own urine, which is certified as drug and adulterant free, along with a "urine test substitution kit." Each urine test substitution kit comes with Curtis' urine, a pouch, a tube, and a chemical hand warmer device. Because proper temperature is critical for acceptance at any urine testing site, each kit comes with "chemically reactive supplemental heat sources" and a temperature monitoring system that insures proper acceptance temperature. Furthermore, the kit can be easily concealed on the body and can be used in a natural urinating position, which means it cannot be detected even if directly observed.[2] According to Privacy Protection Services' website: "Our complete urine test substitution kits allow anyone, regardless of substance intake, to pass any urinalysis within minutes." [3]

Based on his website and his June 17, 1999, affidavit, Curtis maintains his primary objection to urine testing by employers is they do not merely test for drugs, they also test for pregnancy, diabetes, cigarette smoking, hypertension, and other diseases or genetic traits. He believes this type of testing by employers constitutes an infringement on the privacy rights of prospective employees and leads to access of private information.

On June 11, 1999, the Governor of South Carolina signed Senate Bill 277, which amended S.C.Code Ann. § 16-13-470

---

1. Privacy Protection Services can be found at www.privacypro.com.

2. According to the website, each kit contains a small reservoir pouch (about the size of a pack of cigarettes) that has a small diameter tube that can be routed to the genital area. The tube has a flow/stop clip that makes dispensing easy and natural. The kit can be stored indefinitely or kept on hand in case of random testing. These complete kits provide everything needed for two urine testing procedures.

3. In Curtis' Brief he maintains "he does not tout the product as a means to avoid detection of drug or alcohol abuse." However, the website describes how one can conceal the kit in any drug test. The website also includes a cartoon depicting a man urinating on a law enforcement officer. The cartoon is accompanied by the following quotation: "South Carolina law makers are pinching the weenie but can't stop the flow!"

"to provide that selling urine with the intent to defraud a drug screening is a felony." Under section 16–13–470, the penalty for the first offense is a fine of not more than five thousand dollars and imprisonment of not more than three years, or both. The penalty for a second or subsequent offense is a fine of not more than ten thousand dollars or imprisonment of not more than five years, or both. S.C.Code Ann. § 16–13–470 (Supp.2000). Pursuant to the statute, intent is presumed if a heating element or any other device used to thwart a drug-screening test accompanies the sale. *Id.*

On June 18, 1999, Curtis filed a Motion for an *Ex Parte* Temporary Restraining Order and a Motion for a Temporary Injunction. The trial judge granted the *Ex Parte* Temporary Restraining Order on June 18, 1999. On June 30, 1999, the trial court denied the Motion for a Temporary Injunction and issued a formal Order. Curtis' Motion for Reconsideration was denied and this appeal followed.

On September 20, 2000, the Attorney General filed a Motion to Dismiss Appeal as Moot and a Motion to Supplement Record on Appeal with Memorandum in Support Thereof. On August 18, 2000, the trial judge entered an order ruling on the merits of this case, holding section 16–13–470 constitutional and a legitimate exercise of the State's police powers. The Attorney General moves this Court to dismiss the appeal of the denial of a temporary injunction because the appeal is moot. According to the Attorney General's Motion, any order issued by this Court will be advisory and will have no practical effect on an existing controversy.

The following issues are before this Court on appeal:

I. Since the trial court has issued an order on the merits of this case, should this Court dismiss the appeal of the denial of a temporary injunction because the trial court's order renders the appeal moot?

II. Did the trial court err by holding Curtis is not entitled to a temporary injunction against the enforcement of section 16–13–470 when Curtis failed to establish that he will suffer irreparable harm or that he has no adequate remedy at law?

III. Did the trial court err in holding Curtis is not likely to succeed on the merits?

A. Does section 16–13–470 create an impermissible presumption of guilt?

B. Is section 16–13–470 vague, overly broad, and ambiguous?

C. What legitimate public purpose does section 16–13–470 protect?

D. Does section 16–13–470 infringe upon First Amendment rights?

E. Does section 16–13–470 violate equal protection?

F. Does section 16–13–470 constitute cruel and unusual punishment?

G. Does section 16–13–470 impermissibly interfere with interstate commerce?

H. Does section 16–13–470 abridge the right to privacy?

I. Does section 16–13–470 violate the Fourth Amendment?

IV. Did the trial court err in reaching the merits on a motion for temporary relief?

### LAW/ANALYSIS

## I. Mootness

■ The Attorney General argues the appeal in this case is moot and any order issued by this Court will be advisory because the trial court has issued an order on the merits.[4]

■ An appellate court will not pass on moot and academic questions or make an adjudication where there remains no actual controversy. *Jackson v. State*, 331 S.C. 486, 489 S.E.2d 915 (1997). Moot appeals differ from unripe appeals in that moot appeals result when intervening events render a case nonjusticiable. *See* Jean Hoefer Toal, Shahin Vafai & Robert A. Muckenfuss, *Appellate Practice in South Carolina* 122 (1999). "A case becomes moot when judgment, if rendered, will have no practical legal effect upon [the] existing controversy. This is true when some event occurs making it impossible for [the] reviewing Court to grant effectual relief."

---

4. We granted the Attorney General's motion to supplement the Record on Appeal with the trial judge's order on the merits.

*Mathis v. South Carolina State Highway Dep't,* 260 S.C. 344, 346, 195 S.E.2d 713, 715 (1973).

 In the civil context, there are three general exceptions to the mootness doctrine. First, an appellate court can take jurisdiction, despite mootness, if the issue raised is capable of repetition but evading review. *See generally Byrd v. Irmo High Sch.,* 321 S.C. 426, 468 S.E.2d 861 (1996); *Citizen Awareness Regarding Educ. v. Calhoun County Publ'g, Inc.,* 185 W.Va. 168, 406 S.E.2d 65 (1991) (holding an appellate court could consider newspaper's appeal from trial court's injunction compelling newspaper to publish political action advertisement even though case was moot because issue was capable of repetition yet evaded review). Second, an appellate court may decide questions of imperative and manifest urgency to establish a rule for future conduct in matters of important public interest. *See generally Berry v. Zahler,* 220 S.C. 86, 66 S.E.2d 459 (1951) (the court recognized that questions of public interest originally encompassed in an action should be decided for future guidance however abstract or moot they may have become in the immediate contest). Finally, if a decision by the trial court may affect future events, or have collateral consequences for the parties, an appeal from that decision is not moot, even though the appellate court cannot give effective relief in the present case. *See* 5 AM. JUR.2D *Appellate Review* § 649 (1995).

 An order or decree in a court of common pleas granting, continuing, modifying, or refusing an injunction is immediately appealable. S.C.Code Ann. § 14–3–330(4) (Supp. 2000); *Appeal of Paslay,* 230 S.C. 55, 94 S.E.2d 57 (1956) (appeal lay from the restraining order or temporary injunction). However, "[t]he rule that an appellate court limits its review to the issues necessary to a proper disposition of the appeal, and will not consider immaterial or moot questions, applies when reviewing decrees and orders relating to injunctions." 42 AM.JUR.2D *Injunctions* § 335 (2000). Where only injunctive relief is sought and the need for that relief has ceased to be a justiciable issue, an appellate court should not review the merits, or consider the granting of a new trial after it has become impossible to have a new trial in the case. *See*

*generally State ex rel. Mathews v. Eastin,* 179 Kan. 555, 297 P.2d 170 (1956).

Texas courts have held an appeal of a temporary injunction is moot where a trial court renders final judgment while the appeal is pending. *See Lowe v. Farm Credit Bank of Texas,* 2 S.W.3d 293 (Tex.Ct.App.1999); *Save Our Springs Alliance v. Austin Indep. Sch. Dist.,* 973 S.W.2d 378 (Tex.Ct.App.1998) (trial court's final judgment rendered the appeal of the temporary injunction moot). According to Texas case law, dismissing an appeal from a temporary injunction after it has been rendered moot by final judgment is necessary to prevent premature review of the merits of the case. *Isuani v. Manske–Sheffield Radiology Group, P.A.,* 802 S.W.2d 235 (Tex.1991).

The trial judge's June 30, 1999, Order renders this case nonjusticiable because any decision by this Court will not have a practical legal effect on the temporary injunction. The sole object of a temporary injunction is to preserve the subject of the controversy in its condition at the time of the order until opportunity is offered for full and deliberate trial investigation. *Epps v. Bryant,* 218 S.C. 359, 62 S.E.2d 832 (1950). Temporary injunctions are interlocutory, tentative, and impermanent and are superseded by the final judgment rendered on the merits. 42 AM.JUR.2D *Injunctions* § 294 (2000). Thus, temporary injunctions "remain in force only until, and expire upon, the entry of the final judgment and are not enforceable after the final judgment has been entered." *Id.*

Curtis has received a full investigation of his claim because the trial court has rendered a decision on the merits of this case. Therefore, the temporary injunction has expired and the issue is moot. However, we signed an Order taking the appeal on its merits from the Court of Appeals. We consolidated the merits appeal with the temporary injunction appeal. For the sake of judicial economy, we address the merits.

**II. Success on the Merits**

This Court has a limited scope of review in cases involving a constitutional challenge to a statute because all statutes are presumed constitutional and, if possible, will be construed to render them valid. *Davis v. County of Greenville,* 322 S.C. 73, 470 S.E.2d 94 (1996). "A possible constitu-

tional construction must prevail over an unconstitutional interpretation." *Westvaco Corp. v. South Carolina Dep't of Revenue,* 321 S.C. 59, 467 S.E.2d 739 (1995). Further, a legislative act will not be declared unconstitutional unless its repugnance to the Constitution is clear and beyond a reasonable doubt. *Id.* Because Curtis does not establish an infringement of a constitutional right, the trial court was correct in holding he is not likely to succeed on the merits of the following constitutional challenges.

## A. Impermissible Presumption of Guilt

 Curtis argues section 16–13–470 unconstitutionally shifts the burden of proof on the issue of criminal intent to the defendant. We agree. Specifically, section 16–13–470 states, "[i]ntent is presumed if a heating element or any other device used to thwart a drug-screening test accompanies the sale, giving, distribution, or marketing of urine or if instructions which provide a method for thwarting a drug-screening test accompany the sale, giving, distribution, or marketing of urine."

Section 16–13–470 unconstitutionally shifts the burden of proof to the criminal defendant because it states that "intent is presumed" when certain conditions are met. This language violates the United States Supreme Court's holding in *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) because it acts as a conclusive presumption. In *Sandstrom,* the United States Supreme Court held the defendant's due process rights were violated by a jury instruction on the issue of intent where the trial judge instructed, "the law presumes that a person intends the ordinary consequences of his voluntary acts." According to the Supreme Court, the jury in *Sandstrom* may have interpreted the trial judge's instruction as a burden shifting presumption or a conclusive presumption. This jury instruction violates the Fifth and Fourteenth Amendment's due process requirement that the State prove *every* element of a crime beyond a reasonable doubt. In finding such a presumptive instruction unconstitutional, the Supreme Court found where intent is an element of the crime charged, it follows that the trial court may not withdraw or prejudge the issue by instructing the jury the law raises a presumption of intent from an act. *Sandstrom, supra.* This invades the fact finding responsibility of the jury.

A statute may be constitutional and valid in part and unconstitutional and invalid in part. *Thayer v. South Carolina Tax Comm'n,* 307 S.C. 6, 413 S.E.2d 810 (1992). We find the unconstitutional intent language is severable from the remainder of section 16–13–470. The test for severability is whether the constitutional portion of the statute remains complete in itself, wholly independent of that which is rejected, and is of such a character that it may fairly be presumed the legislature would have passed it independent of that which conflicts with the constitution. *Joytime Distribs. & Amusement Co. v. State,* 338 S.C. 634, 648–649, 528 S.E.2d 647, 654 (1999) (citations omitted). "When the residue of an Act, sans that portion found to be unconstitutional, is capable of being executed in accordance with the Legislative intent, independent of the rejected portion, the Act as a whole should not be stricken as being in violation of a Constitutional Provision." *Id.* (quoting *Dean v. Timmerman,* 234 S.C. 35, 43, 106 S.E.2d 665, 669 (1959)).

We find the unconstitutional intent language is severable from the remainder of section 16–13–470. The remainder of the statute outlines the different unlawful ways a person can attempt to defraud a drug and alcohol screening test, using general language to describe intent. The remainder of the statute is complete without the intent presumption language because it allows the jury to infer intent from the circumstantial evidence presented at trial. We presume the legislature would have passed section 16–13–470 regardless of whether the presumption language was included. We, therefore, sever the unconstitutional presumption language from the rest of the statute.

### B. Unconstitutionally Vague and Overbroad

Curtis argues section 16–13–470 is unconstitutionally vague and overbroad. We disagree.

"The concept of vagueness or indefiniteness rests on the constitutional principle that procedural due process requires fair notice and proper standards for adjudication." *City of Beaufort v. Baker,* 315 S.C. 146, 152, 432 S.E.2d 470, 472 (1993). The constitutional standard for vagueness is the practical criterion of fair notice to those to whom the law

applies. *Huber v. South Carolina State Bd. of Physical Therapy Exam'rs*, 316 S.C. 24, 446 S.E.2d 433 (1994). A law is unconstitutionally vague if it forbids or requires the doing of an act in terms so vague that a person of common intelligence must necessarily guess as to its meaning and differ as to its application. *Toussaint v. State Bd. of Med. Exam'rs*, 303 S.C. 316, 400 S.E.2d 488 (1991). One to whose conduct the law clearly applies does not have standing to challenge it for vagueness. *Id.*

■ Although some of the terms in section 16–13–470 are undefined, the intent of the statute is clear on its face. The statute makes it unlawful to "sell, give away, distribute, or market urine . . . with the intent to defraud a drug or alcohol screening test." A person of ordinary intelligence seeking to obey the law will know, and is sufficiently warned of, the conduct the statute makes criminal. Curtis argues that section 16–13–470 is unconstitutionally vague because terms such as "foil," "spike," "defraud," "bodily fluids," and "adulterate" are not defined. However, all of these terms have common, ordinary meanings sufficient to proscribe conduct, and do not need to be specifically defined. *See State v. Hamilton*, 276 S.C. 173, 276 S.E.2d 784 (1981) (the fact that "force or coercion" was undefined by the statute did not render the statute vague or ambiguous because the words are of common, ordinary meaning and are sufficiently specific to proscribe the conduct). Further, all the Constitution requires is that the language convey sufficiently definite warnings as to the proscribed conduct when measured by common understanding and practices. *See State v. Solomon*, 245 S.C. 550, 141 S.E.2d 818 (1965).

## C. Legitimate Public Purpose

■ Curtis argues section 16–13–470 serves no legitimate public purpose. He argues there is no legitimate public purpose in helping "private industry do urine testing that doesn't even reflect accurately on their consumption of substances and which has no relation to impairment of safety." Curtis also argues the Attorney General fails to submit affidavits demonstrating how section 16–13–470 will serve to lessen drug use in the workplace or in any way promote the safety, health, or welfare of the citizens of South Carolina. We disagree.

As noted in the trial court's Order, the United States Supreme Court has held drug testing of employees through urinalysis is lawful and constitutional. *See Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) (testing railway employees for drugs and alcohol after a serious accident was constitutional). The General Assembly has passed several statutes that permit random drug testing to further the public policy of a drug-free work environment. *See* S.C.Code Ann. § 38–73–500 (Supp.2000) (provides a workers' compensation credit for random drug testing to provide incentive for employers to prevent drug use and work-related accidents); S.C.Code Ann. § 41–1–15 (Supp. 2000) (authorizing an establishment of drug prevention program in the workplace which includes a substance abuse testing program).

A statute making it unlawful to defraud a drug test furthers the public purpose of ensuring a drug-free workplace. Section 16–13–470 is a legitimate exercise of the State's police powers in regulating public safety and welfare. Furthermore, the public purpose of creating safety in the workplace outweighs any legitimate interest, if any, of Curtis in doing business.

### D. First Amendment Rights

■ Curtis argues section 16–13–470 violates his right to free speech because it directly prohibits the expression of ideas relative to urine testing. We disagree.

Along with his urine, Curtis provides literature with instructions on how to defeat a drug test and literature regarding his political beliefs on drug testing. Section 16–13–470 does not prohibit Curtis from dispensing literature regarding his political beliefs on urine testing. Furthermore, we sever the provision from section 16–13–470 which states that intent will be presumed if "instructions which provide a method for thwarting a drug-screening test" accompanies the sale of his urine. We find the remaining statute does not infringe on Curtis' right to free speech.

### E. Equal Protection

■ Curtis argues section 16–13–470 violates the Equal Protection Clause because it differentiates urine sales from

the sale of herbal supplements and other products sold to mask drugs in one's urine.[5] We disagree.

The Equal Protection Clause provides: "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. A classification does not violate the Equal Protection Clause if: (1) the classification bears a reasonable relation to the legislative purpose sought to be effected; (2) the members of the class are treated alike under similar circumstances and conditions; and (3) the classification rests on some reasonable basis. *Whaley v. Dorchester County Zoning Bd. of Appeals,* 337 S.C. 568, 524 S.E.2d 404 (1999). The determination of whether a classification is reasonable is initially one for the legislative body and will be sustained if it is not plainly arbitrary and there is a reasonable hypothesis to support it. *Id.* "The fact that the classification may result in some inequity does not render it unconstitutional." *Id.* (citing *Davis v. County of Greenville,* 313 S.C. 459, 465, 443 S.E.2d 383, 386 (1994)).

This case does not involve a suspect classification or a fundamental right, so the question under equal protection analysis is whether the legislation is rationally related to a legitimate state purpose. *Casbah, Inc., v. Thone,* 651 F.2d 551 (8 th Cir.1981) (citing *Massachusetts Bd. of Ret. v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976)). We find the classification of an individual who sells urine or an adulterant to defeat a drug test is rationally related to the legitimate state purpose of promoting a safe work environment. First, the classification is reasonably related to the legislative purpose of insuring the safety of the workplace through the protection of drug testing programs. Second, all people who constitute the class are treated similarly. The classification rests on a reasonable basis and includes any person who sells a product intended to adulterate urine or other bodily fluid sample for the purposes of defrauding a drug or alcohol screening test. S.C.Code Ann. § 16–13–470(A)(5). Curtis' equal protection claims fails because all individuals who engage in conduct prohibited by section 16–3–470 are treated alike, regardless of whether they adulterate urine samples with herbal supplements or chemicals.

---

5. For example, Curtis argues the sale of water is not prohibited even thought it is the primary adulterant used to defeat urine tests.

## F. Cruel and Unusual Punishment

■ Curtis argues the sentence proscribed by section 16–13–470 constitutes cruel and unusual punishment in violation of the Eighth Amendment because the sentence is grossly disproportionate to the severity of the crime. We disagree.

■ The Eighth Amendment only prohibits sentences which are grossly out of proportion to the severity of the crime. *Yeargin v. South Carolina Dep't of Highways & Pub. Transp.*, 313 S.C. 387, 438 S.E.2d 234 (1993) (citations omitted). Pursuant to section 16–13–470, the punishment for a first offense misdemeanor conviction is a fine not more than five thousand dollars or imprisonment of not more than three years, or both. A second, or subsequent, conviction is a felony punishable by a fine not more than ten thousand dollars or imprisonment not more than three years, or both. This punishment is not inhumane or disproportionate to the severity of the crime. The trial court has discretion as to the amount of the fine or length of imprisonment. Moreover, section 16–13–470 does not preclude the sentencing authority from considering mitigating and aggravating circumstances in fashioning an appropriate sentence.

## G. Interstate Commerce

■ Curtis argues section 16–13–470 prohibits the flow of interstate goods and impermissibly burdens interstate commerce. We disagree.

First, this case does not involve the commerce clause, it involves the legislature's exercise of its police powers to prohibit commerce that is intended to defraud South Carolina employers and create an unsafe work environment. Furthermore, section 16–13–470 does not unduly burden interstate commerce because it does not ban the sale of urine and other bodily fluids. It simply makes it unlawful for someone to sell, give away, distribute, or market urine with the *intent* to use the urine to defraud a drug or alcohol screening test.

## H. Right to Privacy

■ Curtis argues he has a constitutional right to sell his urine. He also argues that South Carolina has placed itself in the unlawful position of monitoring urine testing. We disagree.

First, section 16–13–470 does not involve an act of surveillance by the State, it involves the commercialization of urine to defraud drug tests. Second, Curtis does not have standing to assert section 16–13–470 unconstitutionally invades the privacy rights of those who are subject to urine testing. *See Stone v. Salley,* 244 S.C. 531, 537, 137 S.E.2d 788, 790 (1964) *overruled on other grounds by R.L. Jordan Co. v. Boardman Petroleum, Inc.,* 338 S.C. 475, 527 S.E.2d 763 (2000) (holding a plaintiff "cannot obtain a decision as to the invalidity of [an] Act on the ground that it impairs the rights of others."). Finally, the statute does not prohibit Curtis from doing what he wants with his urine. He could even sell his urine for other purposes as long as he does not intend to defraud a drug or alcohol screening test.

## I. Fourth Amendment

■ Curtis argues section 16–13–470 violates the Fourth Amendment. We disagree. In essence, Curtis attempts to assert the Fourth Amendment rights of his customers against drug testing in the workplace. First, Curtis does not have standing to assert the constitutional rights of his customers. *See Stone, supra.* Second, section 16–13–470 does not mandate drug testing, it simply makes it a crime to sell urine or other adulterants with the intent to defraud a drug test.

## III. The Merits

■ Curtis argues the trial court erred in reaching the merits on his Motion for Temporary Relief. We disagree.

■ In determining whether a temporary injunction should issue, the trial judge should not consider the merits of the case, except as they may enable the trial court to determine whether a prima facie showing has been made. *Transcon. Gas Pipe Line Corp. v. Porter,* 252 S.C. 478, 167 S.E.2d 313 (1969). When a prima facie showing has been made entitling the plaintiff to injunctive relief, a temporary injunction will be granted without regard to the ultimate termination of the case on the merits. *Id.* However, when a plaintiff's prima facie case depends on an allegation that a statute in unconstitutional, the trial judge must consider the matter in determining the reasonable necessity for a temporary injunc-

tion. *Hutchison v. York County*, 86 S.C. 396, 68 S.E. 577 (1910). In order to reverse the refusal of a temporary injunction in such a case, this Court must review the constitutional question. *Id.*

A trial court may consider a case's merit to the extent necessary to determine whether a temporary injunction should issue. *Roberts v. Union County Bd. of Sch. Trs.*, 284 S.C. 299, 326 S.E.2d 163 (Ct.App.1985). The trial court in this case found Curtis was not likely to succeed on the merits because he had not established a valid infringement upon a fundamental constitutional right. Although the trial judge ruled on the merits of Curtis' constitutional arguments, it was necessary to determine the likelihood of success on the merits. Furthermore, according to *Hutchison, supra*, it was proper for the trial judge to consider the merits because Curtis' prima facie case depended on an allegation that section 16–13–470 was unconstitutional.

### CONCLUSION

We sever the unconstitutional presumption language from section 16–13–470, affirm the trial court's order upholding the constitutionality of the remainder of section 16–13–470, and find section 16–13–470 is a valid exercise of the State's police powers.

MOORE, WALLER and BURNETT, JJ., concur.

PLEICONES, J., concurring in result only.