# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Zachariah Scott Cooper and Amie Rochelle Lord Cooper, Appellants,

v.

South Carolina Department of Social Services, Shanice Carter, and Michael Jones, Respondent.

AND

Arlene Annett Palazzo, Appellant,

v.

South Carolina Department of Social Services, Shanice Carter, and Michael Jones, Respondent.

In the interest of minors under the age of eighteen.

Appellate Case No. 2018-001151

———————

Appeal from Lexington County
Peter R. Nuessle, Family Court Judge

———————

Opinion No. 27927
Heard September 26, 2019 – Filed November 6, 2019

———————

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

———————

Larry Dale Dove, of Dove Law Group, LLC, of Rock Hill, for Appellants Zachariah Scott Cooper and Amie Rochelle Lord Cooper.

Robert J. Butcher and Deborah J. Butcher, both of The Camden Law Firm, PA, of Camden, for Appellant Arlene Annett Palazzo.

Scarlet Bell Moore, of Greenville, for Respondent South Carolina Department of Social Services.

Amanda Mange Scott, of Parnell & Parnell, P.A., of White Rock, for Respondent Shanice Carter.

Earnest Deon O'Neil, of Columbia, for Respondent Michael Jones.

---

**JUSTICE JAMES:** Zachariah Scott Cooper, Amie Rochelle Lord Cooper, and Arlene Annett Palazzo are foster parents of three sibling children placed in their care by the South Carolina Department of Social Services (DSS). The Coopers foster one of the children, and Palazzo fosters the other two children. DSS initiated removal actions in the family court. The Coopers and Palazzo (collectively, Foster Parents) filed private actions seeking termination of parental rights (TPR) and adoption of their respective foster children. This consolidated appeal stems from the family court's order denying several motions made by Foster Parents. We affirm in part, reverse in part, and remand this matter to the family court for further proceedings consistent with this opinion.[1]

---

[1] Two weeks before oral argument, Foster Parents moved to supplement the record with correspondence between counsel for the Coopers (Mr. Dove) and DSS General Counsel Anthony Catone. The correspondence consists of two letters, one from Mr. Dove to Mr. Catone, and a letter in response from Mr. Catone to Mr. Dove. The letters have nothing to do with this case, and they will in no way aid this Court in evaluating and deciding the issues in this appeal. We find the motion to supplement is completely without merit.

# FACTUAL AND PROCEDURAL BACKGROUND

Michael Jones (Father) and Shanice Carter (Mother) are the biological parents of four children. Child 1 was born in 2013, Child 2 was born in 2014, and Child 3 was born in 2016. Child 1, Child 2, and Child 3 (collectively, the Children) are the focus of this appeal. The fourth child's interests are not an issue in this litigation.

DSS removed Child 1 and Child 2 from Father and Mother's care in 2015 and placed them in foster care with Palazzo. DSS removed Child 3 from Father and Mother's care shortly after his birth and placed him in foster care with the Coopers in July 2016, and Child 3 has continuously resided with the Coopers since then. At the time of oral argument, this Court was under the impression that Child 1 and Child 2 had been residing with Palazzo since their placement with Palazzo in 2015; however, this Court learned through collateral filings made after oral argument that DSS removed Child 1 and Child 2 from Palazzo's home in February 2019 and placed them with the Coopers. This removal was prompted by an abuse complaint made against Palazzo, and proceedings relative to that complaint are reportedly still pending. Palazzo strenuously denies the complaint.

DSS commenced two separate removal actions in the family court, one involving Child 1 and Child 2, and the other involving Child 3. Foster Parents assert DSS repeatedly informed them the permanent plan for the Children was TPR and adoption. However, in January 2018, Foster Parents received word that DSS was considering changing the permanent plan to relative placement with a maternal great uncle. A DSS caseworker subsequently sent Mrs. Cooper a text message informing her that the great uncle's home study was favorable. After Mrs. Cooper inquired as to what the placement plan was and as to whether there would be any transitional arrangements for the Children, the DSS caseworker replied, "Good morning, the agency has decided that there will not be any transitional visits. . . So if everything goes as planned on [March] 5th, I will be moving all of the children on the 6th."

On January 29, 2018, Palazzo filed a complaint seeking TPR and adoption for Child 1, Child 2, and Child 3. After learning the Coopers wanted to adopt Child 3, Palazzo amended her complaint seeking TPR and adoption for only Child 1 and Child 2. On February 12, 2018, Palazzo moved to (1) intervene in the DSS removal action concerning Child 1 and Child 2, (2) consolidate her TPR and adoption action with DSS's removal action, and (3) have physical placement of Child 1 and Child 2. DSS opposed each motion.

On March 1, 2018, the Coopers sent a letter to DSS objecting to Child 3's removal and appealing DSS's intended removal of Child 3. On March 2, 2018, the

Coopers filed a complaint seeking TPR and adoption for Child 3. The Coopers also moved to (1) intervene in the DSS removal action concerning Child 3, (2) consolidate their TPR and adoption action with the removal action, (3) request discovery in the consolidated action, (4) require DSS to join their TPR and adoption action, and (5) have temporary custody of Child 3. DSS opposed each motion.

Palazzo submitted several affidavits from professionals and friends endorsing her parenting skills and supporting the continued placement of Child 1 and Child 2 in her home. Child 1 and Child 2's therapist, Dr. Warren Umansky Ph.D., LPC, spoke highly in his affidavit of Palazzo's parenting skills and stated that disrupting Child 1 and Child 2's placement again "would be irresponsible and do further damage to these impressionable children at a time where they are experiencing success, enjoyment in their lives, and security." Licensed Professional Counselor Pam Stafford performed an assessment of Palazzo, Child 1, and Child 2 and stated in her affidavit that Ms. Palazzo is clearly a central figure in these two children's lives and that their relationship is creating a solid foundation for empathy, control, trust, and overall emotional well-being. Stafford further stated the relationship should not be interrupted unless absolutely necessary, as breaking the bond would re-traumatize the children.

The Coopers submitted affidavits from two professionals supporting the continued placement of Child 3 in their home. Stafford performed an assessment of the Coopers and Child 3 and found the attachment relationship between the Coopers and Child 3 is secure and apparent and that this attachment helps a toddler learn basic trust, enhances intellectual development, and creates a foundation for a sense of identity. Stafford further stated healthy attachment forms the foundation for emotional well-being and that it would be incomprehensible for such a child to be removed from the only home he has ever known unless it was absolutely necessary.

Dr. Philip G. Steude, MD, found Child 3 was bonded to the Coopers and stated, "Removal of this Child from [the] ongoing presence of Mrs. Cooper and, secondarily, Mr. Cooper and the older children would be exceptionally disruptive and traumatic. [Child 3's] basic response would tend to be shutting down relationships with other people, withholding and avoiding, causing probable disruption of his personality development into being a loner, angry, and untrusting."

On March 5, 2018, the family court held a permanency planning hearing in the DSS removal actions. At the hearing, DSS sought relative placement with the maternal great uncle, even though Mother lived with great uncle. Mother and Father supported this placement. DSS recommended the Children be placed with the great uncle as soon as possible. The Children's volunteer guardian ad litem (GAL) in the

DSS actions did not "feel comfortable making a recommendation because everything ha[d] changed so quickly." Foster Parents objected to the permanency planning hearing going forward until their administrative appeal and motions could be heard. The family court continued the hearing, noting Foster Parents' pending motions would have to be heard and that there was no need to rush the Children's removal from Foster Parents' homes.

On March 19, 2018, the family court heard Foster Parents' motions. DSS, Mother, and Father opposed Foster Parents' motions. At this hearing, DSS announced to the family court it was no longer pursuing TPR and adoption or placement with the great uncle and stated the permanent plan for the Children was reunification with Mother. DSS noted Mother was seven months into a twelve month treatment plan and that Mother had to that point successfully completed the plan, with the exception of the duration requirement for stable housing. DSS argued that intervention, consolidation, and granting discovery rights to Foster Parents would unnecessarily complicate the case. DSS argued Foster Parents' intervention rights were strictly permissive and not mandatory. DSS also argued the volunteer GAL could protect the Children's interest and that Foster Parents had a right to attend the permanency planning hearing and to proceed with their private TPR and adoption actions.

The volunteer GAL stated her position on the motions. She recognized this case was complicated but noted it was not complicated due to Foster Parents' conduct. The GAL noted the length of time the Children had been with Foster Parents and that Foster Parents had not caused any delay in the removal actions. She noted the need for permanency and stated her belief that intervention by Foster Parents would allow the court to hear all the facts before making decisions in the removal actions that would be in the best interests of the Children. The Foster Care Review Board advised the family court that it believed intervention was appropriate and that the permanent plan for the Children should be TPR and adoption.

The family court took Foster Parents' motions under advisement. Foster Parents submitted briefs and documents to the family court to support their arguments. The volunteer GAL submitted a memorandum reiterating her agreement with Foster Parents' arguments regarding intervention. The GAL expressed concern about allowing consolidation because different statutes govern the role of a volunteer GAL in a DSS action and the role of a GAL in a private action, and the GAL stated a volunteer GAL should not "be expected to serve in protracted litigation involving contests primarily between private parties." The GAL requested that if the actions were consolidated, a private GAL be appointed at Foster Parents' expense. The GAL

did not object to Foster Parents' motions for discovery and supported Foster Parents' motions for temporary custody and placement of the Children.

On April 13, 2018, the family court issued an order summarily denying all of Foster Parents' motions. Foster Parents filed motions for reconsideration, which the family court also summarily denied. Foster Parents timely appealed the family court's decision, and the court of appeals consolidated the two appeals. The court of appeals requested certification, and this Court granted the motion pursuant to Rule 204(b) of the South Carolina Appellate Court Rules. Neither Mother, Father, nor DSS filed briefs with the court of appeals or this Court. On July 23, 2019, counsel for DSS sent a letter to this Court formally withdrawing its opposition to, and joining in, the relief sought by Foster Parents.

## DISCUSSION

As we stated above, the family court summarily denied all of Foster Parents' motions without setting forth any findings in support of its denial of the motions. In their motions for reconsideration, Foster Parents requested the family court to set forth specific findings of fact and conclusions of law; however, the family court summarily denied the motions for reconsideration.

We stress that the family court must set forth pertinent findings of fact and conclusions of law when ruling upon motions to intervene and to consolidate, especially when the best interests of children are at stake. The unique facts of each case make it all the more important for the family court to fully set forth its findings when ruling on such motions. *See* Rule 26(a), SCRFC ("An order or judgment pursuant to an adjudication in a domestic relations case shall set forth the specific findings of fact and conclusions of law to support the court's decision."). We review a family court's evidentiary or procedural rulings under an abuse of discretion standard. *Stoney v. Stoney*, 422 S.C. 593, 594 n.2, 813 S.E.2d 486, 486 n.2 (2018). The absence of any factual findings to support the family court's denial of Foster Parents' motions makes our review of the family court's decision difficult. In many instances, a remand to the family court would be appropriate; however, to avoid further delay in establishing permanency for the Children, we have examined the record and will address the merits of each motion.

## I.    Foster Parents' Motions

### A. Intervention

Foster Parents argue the family court erred in denying their motions to intervene in the underlying DSS removal actions.  Foster Parents contend their interest in TPR, adoption, custody of the Children, and the Children's welfare give them the right to intervene.  They assert the disposition of the DSS removal action without their full participation may impair or impede their ability to maintain the Children in their custody and their ability to adopt the Children if they are ever available for adoption.

"Generally, the rules of intervention should be liberally construed where judicial economy will be promoted by declaring the rights of all affected parties." *Ex Parte Gov't Emp.'s Ins. Co. v. Goethe*, 373 S.C. 132, 138, 644 S.E.2d 699, 702 (2007).  Section 63-7-1700(J) of the South Carolina Code (Supp. 2019) discusses permanency planning and provides in pertinent part, "Any other party in interest may move to intervene in the case pursuant to the rules of civil procedure and if the motion is granted, may move for review.  Parties in interest include . . . the foster parent."   Rule 24 of the South Carolina Rules of Civil Procedure governs intervention and allows for (1) intervention of right and (2) permissive intervention. Rule 24 provides:

> **(a) Intervention of Right.**  Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

> **(b) Permissive Intervention.**  Upon timely application anyone may be permitted to intervene in an action: (1) when a statute confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common.  When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be

permitted to intervene in the action.  In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Rule 24, SCRCP.

Foster Parents argue Rule 24 entitles them to both intervention of right and permissive intervention.  DSS opposed intervention before the family court but now joins Foster Parents' motions to intervene; however, DSS asserts a foster parent's right to intervene is strictly permissive.  We agree with DSS.  The right of foster parents to intervene in a DSS removal action does not arise out of their status as foster parents but arises, if at all, through the evolution of a special relationship illustrated to the family court via the underlying facts of each individual case.  Indeed, a plain reading of section 63-7-1700(J) indicates the intervention rights of a foster parent in a DSS removal action are permissive.  Section 63-7-1700(J) provides that a foster parent is a "party in interest" in a DSS removal action.  Section 63-7-1700(J) further provides that a "party in interest may move to intervene in the case pursuant to the rules of civil procedure and *if* the motion is granted, may move for review."  (emphasis added).  By using the word "if" in the emphasized portion of the statute, the General Assembly recognized a foster parent's right to intervene in a removal action is not absolute.

A family court should therefore apply Rule 24(b)(2) when analyzing whether or not to grant a foster parent's motion to intervene.  *See* Rule 24(b)(2), SCRCP (permitting intervention upon timely application "when an applicant's claim or defense and the main action have a question of law or fact in common" and upon consideration of "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties").

Here, the family court erred in denying Foster Parents' motions to intervene.  First, there is no dispute that Foster Parents timely moved to intervene, as required under Rule 24(b)(2).[2]  Further, while foster parent intervention will not be

---

[2] "Courts have adopted a four-part test for determining timeliness: '(1) the time that has passed since the applicant knew or should have known of his or her interest in the suit; (2) the reason for the delay; (3) the stage to which the litigation has progressed; and (4) the prejudice the original parties would suffer from granting intervention and the applicant would suffer from denial.'" *Davis v. Jennings*, 304 S.C. 502, 504, 405 S.E.2d 601, 603 (1991) (quoting *Mokhiber v. Davis*, 537 A.2d 1100, 1104 (D.C. 1988)).

appropriate in every removal action, here, Foster Parents have demonstrated their private TPR and adoption actions and the DSS removal actions have questions of law and fact in common. The best interests of the Children are certainly a consideration the private actions and the DSS actions have in common, especially when considering the length of time the Children have been with Foster Parents. Expert testimony indicates the Children are bonded with Foster Parents and that alternative placement would be severely detrimental to the Children.[3]

Under these circumstances, intervention will allow the family court to receive input from Foster Parents that will aid the family court in reaching a timely decision on the merits of both removal actions. We further conclude intervention will not unduly delay or prejudice the adjudication of the rights of the parties to these actions. We therefore hold the family court erred in denying the motions to intervene.

We stress that our decision in this case should not be interpreted as a signal to the family court bench and bar that intervention should be granted to foster parents in every case. The decision to grant intervention remains in the discretion of the family court following its analysis of the facts and procedural posture of each case.

### B. Consolidation

Foster Parents argue the family court erred in denying their motions to consolidate the DSS removal actions with their private TPR and adoption actions. Rule 42(a) of the South Carolina Rules of Civil Procedure addresses consolidation and provides:

> **(a) Consolidation.** When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all matters in issue in the action; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Rule 42(a), SCRCP.

---

[3] Before the family court, DSS objected to intervention. However, we cannot ignore the fact that DSS now joins in the motions to intervene. Consent of DSS in any given case would not, in and of itself, require a family court judge to grant a foster parent's motion to intervene; however, DSS's consent and its reasons for such consent would certainly be factors the family court should consider.

We remand this issue to the family court and instruct it to reconsider Foster Parents' motions to consolidate in light of DSS's change in position and any changes in the underlying facts to this case since the family court's original ruling. The Children's GAL raised legitimate concerns regarding the consolidation of Foster Parents' private actions with the DSS removal actions. We conclude it is appropriate for the family court to promptly resolve the consolidation issue after hearing from the parties and the GAL.

## C. Joinder

Rule 19(a) of the South Carolina Rules of Civil Procedure governs the joinder of persons needed for just adjudication and provides:

> **(a) Persons to Be Joined if Feasible.** A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff.

Rule 19(a), SCRCP.

### i. *Joining Foster Parents to the DSS Removal Actions*

Foster Parents argue the family court should have been required to join them as parties in the DSS removal actions. We decline to address this issue because our reversal of the family court's denial of Foster Parents' motions to intervene in the DSS removal actions moots this issue. *See Sloan v. Dep't of Transp.*, 379 S.C. 160, 167-68, 666 S.E.2d 236, 240 (2008) (providing that when there is no actual

controversy, this Court will not rule on moot or academic issues).  We find none of the exceptions to the mootness doctrine apply.[4]

### ii. Joining DSS to the Coopers' Private TPR and Adoption Action

The Coopers argue the family court erred by not requiring DSS be joined to their private TPR and adoption action.

Section 63-7-1710(A) of the South Carolina Code (Supp. 2019) provides in pertinent part:

> (A) When a child is in the custody of the department, the department shall file a petition to terminate parental rights or shall join as party in a termination petition filed by another party if:

> (1) a child has been in foster care under the responsibility of the State for fifteen of the most recent twenty-two months[.]

Child 3 was in foster care for over fifteen of the most recent twenty-two months at the time the Coopers filed their motion.  Thus, the plain language of the statute indicates DSS "shall join as party" in the Coopers' TPR petition.  However, there was no need for the family court to join DSS as a party in the Coopers' TPR action because the Coopers had already included DSS as a defendant in that action.  Therefore, we affirm the family court's denial of the Coopers' motion to join DSS as a party to their private TPR and adoption action.

## II. Best Interests of the Children

Foster Parents argue the family court failed to consider the best interests of the Children when ruling on their motions.  We do not know whether the family court considered the Children's best interests in ruling on Foster Parents' motions because the order includes no discussion of the issue.  However, Foster Parents are correct that in every ruling made by the family court impacting the rights of children, including those procedural in nature, the family court must consider the best interests of the subject children.  As noted above, allowing Foster Parents to intervene in the

---

[4] *See Curtis v. State*, 345 S.C. 557, 568, 549 S.E.2d 591, 596 (2001) (providing there are three exceptions to mootness in the civil context: (1) if the issue is capable of repetition, yet evading review; (2) if the issue is of "imperative and manifest urgency to establish a rule for future conduct in matters of important public interest"; and (3) "if a decision by the trial court may affect future events, or have collateral consequences for the parties").

DSS removal actions will allow the family court to receive input from Foster Parents that will aid the family court in reaching a timely decision on the merits of both removal actions.

## CONCLUSION

We affirm the family court's denial of Foster Parents' motions for joinder. We reverse the family court's denial of Foster Parents' motions to intervene. We remand for further consideration of Foster Parents' motions for consolidation. As of the date of this opinion, the Children are placed with the Coopers. Unless circumstances arise adversely affecting the safety and well-being of Child 3, Child 3 shall remain in his current placement with the Coopers during the pendency of these actions. Unless circumstances arise adversely affecting the safety and well-being of Child 1 and/or Child 2, Child 1 and/or Child 2 shall remain in their current placement with the Coopers pending resolution of the abuse complaint against Palazzo. If the complaint against Palazzo is determined to be unfounded while these actions remain pending, Child 1 and Child 2 shall be returned to Palazzo. Thereafter, unless circumstances arise adversely affecting the safety and well-being of Child 1 and/or Child 2, they shall remain with Palazzo during the pendency of these actions. The family court shall address any circumstances adversely affecting the safety and well-being of the Children that may arise during the pendency of these actions.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**BEATTY, C.J., KITTREDGE, HEARN and FEW, JJ., concur.**