Colcock, J.
delivered the opinion of the Court.
On these facts I granted the rule, reserving the right of giving my opinion when the question should he brought up to the Constitutional Court. A motion is made by the counsel for the incumbent to rescind the. order, on the following ground: That the act of 1H12, limiting the duration of the office of Ordinary to the term of four years, is unconstitutional, because the Ordinary is a Judge, and is comprehended in the provisions of the third article and first section of the Constitution, and holds his office during good behaviour.
The first point which presents itself for consideration is, whether the Ordinary is a judicial officer; and, in order to determine this, we must look to the origin of the office. After the right to dispose of such property,as an individual might possess at the time of his death by will, was established, it became necessary to provide for cases in which the right was not exercised. When a man died without making any disposition of his goods, he was said to die intestate, and in such cases the King was entitled, by the old law, to seize upon his goods, as the parens patries, or general trustee, of the kingdom. Afterwards this power, or branch of the prerogative, (as it is called by some,) was vested in the Prelates, among whom was- the Or *269 dinary, who was a Judge of the Ecclesiastical Court. . “ The goods, therefore, of intestates, were given to the Ordinary by the Crown.” 2 Blackst. Com.p. 494. Rep. 38.
Ordinary is a Civil Law term for any Judge who hath authority to take cognizance of causes in his own right, and not by deputation. By the Common Law, it is taken for him who hath ordinary Or exempt and immediate jurisdiction in causes ecclesiastical. 4 Tom. Ed. Jacobs' Law Dict. 446. Co. Lit. 344. Stat. of West. 2. 13 Edw. 1. Stat. 1. 1 C. 19. If the word Judge had not been used in this description of an Ordinary, the circumstance of his exercising his jurisdiction in his own right, and not by deputation, would have fixed on him the character of a judicial officer; for it is the peculiar character of judicial authority that it cannot be delegated. Coke, 97. In the 2d volume of Black, page 496, speaking of the power of the Ordinary, he says, “The statute of 21 Henry the 8th, enlarges a little more the power of the ecclesiastical Judge, and .permits him to grant,” &c. Hence it appears that the Ordinary has always been considered at the Common Law as a Judge.
I will now advert to some of the duties which he performs, as a further illustration that he always has, and still does, exercise judicial authority. 1st. He is authorized to grant letters of administration ; in the discharge of which duty he must decide, first, whether the deceased died in *270 testate, a question which involves some difficult doctrines of law; and sometimes who is next of kin, which must depend on the rules establishing degrees of consanguinity. He has power to summon witnesses, to call administrators to an account, and to distribute according to law any surplus, which may remain in the hands of the administrators, among the representatives of the intestate. He can issue process for contempt, a power unknown to the exercise of mere ministerial authority; and all this power (or, to speak technically, jurisdiction) is exercised in a Court. We speak of the trials and duties of the Court of Ordinary. What does this imply but the exercise of judicial authority ? “ There is a distinction of offices into judicial and ministerial. The first, relating to the administration of justice, the actual exercise of which must be exercised by the persons themselves to whom they are granted.” Coke, 97. 1 Jon. 109. Das. 35, 9. I think I have shown that the duties of this office relate to the administration of justice, and I would ask if they can be delegated ? He is denominated Judge in many of the acts of our Legislature, as well as in common parlance.
In the act of 1789, (2 Brevard, p. 94,) it is enacted in those counties where there are no County Courts established, The Judges of the Courts of Ordinary in the several districts shall, &c. And again, in the act of 1799, (2 Brev. 95,) that from and after the 1st day of January, there shall *271 be established a Court of Ordinary in each district. The Judges of the said Court of Ordinary shall be chosen by joint ballot, &c., and that it shall he lawfal for any Judge of the Court of dinary in this state, &c. Having, as I conceive, clearly established that the Ordinaries of the state are Judges, I proceed to consider whether they are embraced in the Id article and the 1st section of the Constitution of our state, which is in these words: “ The judicial power shall be vested in such superior and inferior Courts of Law and Equity as the Legislature shall from time to time direct and establish. The Judges of each shall hold their commissions during'good behavidur.” The Ordinaries are no where *distinctly and separately mentioned in the Constitution, and it is a well established rule in the construction of public acts, that where technical words are used, a technical meaning must attach. The article speaks of Judges. The Ordinaries are Judges; they are therefore embraced in the Constitution. I shall now proceed to inquire whether the incumbent can be deprived of his office by the act of 1812, consistently with the provisions of the Constitution. It was contended that the incumbent had a freehold in his office, and that by the 2d section of the 9th article of the Constitution, no freeman shall be dis-seized of his freehold, or deprived of his life, liberty, or property, but by the judgment of his peers of the law of the land. If, then, the incum *272 bent had a freehold in his office’, which I do not think he can have by the laws of this country, yet he would not be protected by this clause of the Constitution. The 3d article of the Constitution says he shall hold his office during good behaviour; and the 5th article guarantees to all civil officers the trial by Senate. I rest the point, then, on the law of contracts, bottomed on those fundamental principles of justice which should regulate the conduct of all, and from which I presume it will not be contended that the state is exempt.
The contract between the incumbent and the state was, that he should hold the office during good behaviour, and that if he were charged with any misconduct in office, he should be impeached by the House of Representatives, and tried by the Senate. No charge of misconduct against the incumbent has been made; no impeachment prosecuted; and therefore no act of the Legislature declaring his office vacant, can comport with the constitutional guarantee, or condition of contract, under which he accepted the office. The legislature, at its last sitting, repealed the act of 1812, so far as it related to clerks of the Court, upon the ground that it was in violation of an implied contract with those officers, who by their commissions, and by them alone, we are induced to believe that they should hold their offices during good behaviour. I am then, I trust, more strongly authorized to declare *273 that act unconstitutional, when it is found to violate the tenure of office guaranteed to the incumbent by the Constitution.
Richardson, for the motion.
E. P. Simons, contra.
Bay and Johnson, J. concurred.
Mott, J. dissented.