## 10050

### STATE v. CAGLE *ET AL.*

#### (96 S. E. 291.)

1. INFANTS — SENTENCE TO INDUSTRIAL SCHOOL. — Cr. Code 1912, sec. 994, authorizes Court to sentence to industrial school without consent of parents

2. CRIMINAL LAW — APPEAL—PRESUMPTION. — Where Court found that interests of infant defendants would be promoted by sentence to State Industrial School Supreme Court is bound to assume that discretion was wisely exercised where evidence upon which that conclusion was reached is not before it.

3. CONSTITUTIONAL LAW—EQUAL PROTECTION—PROSECUTION OF INFANTS.
—Cr. Code 1912, sec. 999, providing that infants tried and convicted
may be sentenced to State Industrial School until they reached the age
of 21, is not unconstitutional, in that it denies infants equal protec-
tion of the laws, especially in view of Const., art. 12, sec. 7, expressly
conferring upon legislature authority to establish a reformatory for
juvenile offenders.

4. REFORMATORIES—PAROL OF INMATES.—Discretion left to managers of
State Industrial School to determine when infant shall be paroled is
not arbitrary, but subject to supervision, revision, and control in
manner prescribed by law.

5. INFANTS—LEGISLATION CONCERNING—VALIDITY.—Statutes concerning
infants are entitled to favorable and liberal construction, and it is not
a valid objection to them that within reasonable limits they may
deprive children of their liberty or parents of their custody.

Before ——————— Greenville ——————— Term
————————. Affirmed.

Arthur Cagle and Sergeant Moore were convicted of
petit larceny and sentenced to the State Industrial School,
and they appeal.

*Messrs. Bonham & Price,* for appellants.

*Solicitor Robert Martin,* for the State.

July 19, 1918.

The opinion of the Court was delivered by MR. JUSTICE
HYDRICK.

Appellants are boys of the ages of 8 and 10 years. They
were tried with John Taylor, another boy of the age of
12 years, on the charge of housebreaking and larceny in
the nighttime. Taylor pleaded guilty. For Cagle and
Moore the plea of not guilty was entered by their attorney,
on the ground that they were *incapax doli* from age. The
jury found all the defendants guilty of petit larceny. Upon
consideration of the circumstances of the case as disclosed
by the testimony, and upon investigation of the previous
record of the defendants, the Court committed them to the
State Industrial School at Florence, "until they arrive at

the age of 21 years, unless sooner discharged upon proba-
tion or parol, as provided by law." Cagle and Moore
appealed, alleging error in the sentence.

They contend: (1) That under Section 994 of the Crimi-
nal Code the Court was not authorized to commit them
to the State Industrial School, until they attain their major-
ity, without the consent of their parents; and (2) that as
the sentence prescribed by statute for petit larceny in ordi-
nary cases is imprisonment for not more than 30 days, and
as an adult could not have been sentenced to imprisonment
for a longer time, the statute under which they were com-
mitted for a longer time is unconstitutional, because it
denies to them the equal protection of the laws.

(1) Section 994, Cr. Code, reads:

"When any white boy between his eighth and seventeenth
birthday, shall have been tried and convicted of any crime
punishable by imprisonment in the State penitentiary or in
jail, or by hard labor for the county, by any Court or mag-
istrate of this State, such Court, or magistrate may, if of
opinion that the interest of such boy would thereby be pro-
moted, sentence such boys to commitment to such school,
in lieu of such imprisonment or hard labor; or he may remit
such sentence upon condition that said boy be voluntarily
committed by his parents or guardian, or the person having
charge of him (or by such boy himself, if he have no one
to care for him), to the custody of said institution until he
reach the age of twenty-one years."

The language of the statute plainly authorized the sen-
tence imposed without the consent of the appellant's parents.
The alternative provision, that the Court may remit the sen-
tence, on the condition specified, is permissive only, and
therefore discretionary.

(2) As the Court found from the facts and circumstances
of the case brought out at the trial, and from an investiga-
tion of the previous records of the appellants, that their
interests would be promoted by the sentence imposed, and as

the evidence upon which that conclusion was reached is not before us, we are bound to assume that the discretion was wisely exercised.

(3) There can be no doubt that the legislature has the power, under the State and Federal Constitutions, to classify crimes and criminals, and provide for differences in the extent or degree of punishment for crimes of the same class according to the circumstances, and for differences in the ·treatment or punishment of criminals of different classes for the same crime, provided such classification be reasonable, and all offenders of the same class be subject to the same treatment. *Graham v. West Virginia*, 224 U. S. 616, 32 Sup. Ct. 583, 56 L. Ed. 917. In that case, it was held that the Fourteenth Amendment did not introduce a factitious equality, without regard to practical differences that are best met by corresponding differences of treatment; and a State statute, under which life imprisonment had been imposed, on the ground that defendant had twice before been sentenced to confinement in a penitentiary, was sustained.

Classification may be based upon the nature of the offender as well as upon the nature of the offense. There are many sound reasons for basing it upon the age of the offender. If habitual criminals may be put into a class and imprisoned for life, in order that society may be protected against them, there are stronger reasons why youthful offenders should be put into a class, and kept at school, until they attain their majority, in order that they may be given the benefit of that training and guidance which may reform them and make them· fit for citizenship.

Society has learned from experience that preventive justice is preferable to punitive justice, and more effective for its protection. And so the chief end of punishment—especially of youthful offenders—has come to be reformation, which was the manifest purpose of the·legislature in founding the school to which these appellants were committed.

Reformation requires time—more in some cases than in others. Therefore the legislature, in its wisdom, left it to the managers of the school to determine when it has been accomplished, within the limit of time prescribed by the statute, with authority to discharge or parole those placed under their tuition, when, in their judgment, the purpose intended has been accomplished.

(4) It is scarcely necessary to add that their discretion is not abitrary, but subject to supervision, revision, and con- trol in the manner prescribed by law. Statutes providing for indeterminate sentences of· all classes of criminals, within reasonable limits, for the purpose of effecting their reformation, have been very generally sustained as within the power of the legislature, and as violative of no consti- tutional right. 8 R. C. L., pp. 261, 267; *Woods v. State,* L. R. A. 1915f, 531, and note.

(5) The State is vitally interested in its youth, for in them is the hope of the future. It may therefore exercise large powers in providing for their protection and welfare. Such statutes are beneficial and remedial, and entitled to favor- able and liberal construction; and it is not a valid objection to them that, within reasonable limits, they may deprive children of their liberty or their parents of their custody and the rights usually incident to it. 14 R. C. L., pp. 273, 277. The welfare of the child is superior to the rights of its parents. *Whalen v. Olmstead,* 15 L. R. A. 593, and note,

We have no doubt of the general power of the State, as *parens patriæ,* to make and enforce reasonable laws looking to the education, welfare, and protection of its youth. But, in addition to that power, the Constitution (article 12, sec. 7) has expressly conferred upon the legislature authority to establish and maintain a reformatory for juvenile offenders. By necessary implication, that authority includes the power to enact such laws and establish such rules and regulations with respect to such an institution and its management, and

those who may be committed to it, as may reasonably be deemed necessary or proper for the accomplishment of the purpose intended.

Judgment affirmed.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES FRASER and GAGE concur.

MR. JUSTICE WATTS. I dissent. I do not believe that Courts have power to enlarge the punishment of a child convicted of petit larceny, so as to inflict upon him such fearful punishment. The Court can only sentence for 30 days. That is the maximum sentence.