579 S.E.2d 320

**William F. HENDRIX, III, Appellant,**

**v.**

**Gene TAYLOR, Sheriff of Anderson County, Respondent.**

**No. 25615.**

Supreme Court of South Carolina.

Heard Oct. 8, 2002.

Decided April 7, 2003.

Charles W. Whiten, Jr., of Anderson, for appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Attorney General Tracey Colton Green, all of Columbia, for respondent.

Chief Justice TOAL.

William Hendrix ("Appellant") appeals from the trial judge's refusal to grant injunctive relief to prevent Appellant from being listed in the South Carolina Sex Offender Registry.

## Factual/Procedural Background

William Hendrix pled guilty to sexual assault in the third degree; assault in the third degree; and trespass in the first degree in Gunniston County, Colorado on August 25, 2000. The sexual assault charge stemmed from an incident in which Appellant grabbed the breasts and buttocks of a woman several times in a bar without her consent. The Colorado

court sentenced Appellant to 62 days in jail, four years probation, and a fine of nearly $19,000. Appellant was also required by Colorado statute to register as a sex offender,[1] but could petition to be removed from the registry five years after the date of his guilty plea.[2]

On November 15, 2000, Appellant and his spouse moved to Anderson, South Carolina, which triggered the requirements of the South Carolina Sex Offender Registry Act ("Act"). S.C.Code Ann. §§ 23–3–400 through –520. The Act mandates that Appellant register as a sex offender in South Carolina for life. S.C.Code Ann. § 23–3–460; See South Carolina Sex Offenders Registry at *http://www.sled.state.sc.us.* The online registry provides information like sex, age, height and weight to help identify the offender. It also includes the offender's last reported address and the sex offense that he committed. Originally, Appellant was registered as having committed Assault and Battery of a High and Aggravated Nature ("ABHAN"), but sometime between March 22, 2002, and October 8, 2002, the offense was changed to Assault with Intent to Commit Criminal Sexual Conduct in the Third Degree.[3]

On November 22, 2000, Appellant filed this action seeking a declaratory judgment that the Act does not apply to his Colorado conviction for third degree sexual assault, and that his mandatory listing on the Sex Offender Registry of South Carolina violated his constitutional right to equal protection and due process. Appellant also moved to permanently enjoin the Sheriff of Anderson County from requiring that he register under the Act.

---

1. At the time that Appellant pled guilty, the relevant Colorado statute was Colo.Rev.Stat. Ann. § 18–3–412.5 (West 1999 & Supp.2000). The provision of this statute defining which persons who are required to register can now be found in Colo.Rev.Stat. Ann. § 16–22–103 (West Supp.2002), which was effective July 1, 2002.

2. At the time that Appellant pled guilty, the relevant Colorado statute that addressed the petition to be removed from the registry was Colo. Rev.Stat. Ann. § 18–3–412.5(7) (West 1999 and Supp.2000). The statute that presently covers the petition is Colo.Rev.Stat. Ann. § 16–22–113 (West Supp.2002), which was effective July 1, 2002.

3. The March 22, 2002, document was provided in the Record On Appeal, and October 8, 2002, was the date of oral arguments for this case.

The trial court denied Appellant's request for injunctive relief, rejected his constitutional claims, and required him to register under the Act.

Appellant raises the following issue on appeal:

Did the trial court err when it concluded that requiring Appellant to register under the Sex Offender Registry Act did not violate his right to Equal Protection or Due Process when the equivalent offense, if committed in South Carolina, would not have required registry?

## Law/Analysis

Appellant argues that the state has violated his right to equal protection by forcing him to register on the South Carolina Sex Offender Registry for an offense he committed in Colorado when the equivalent offense, if committed in South Carolina, would not have triggered the requirement that he register.[4] We disagree.

The movement to enact sex offender registration statutes arose after Megan Kanka, a seven-year old child, was raped and murdered in New Jersey by a convicted sex offender who had moved in across the street from her family.[5] The killer enticed the girl to come over to his house in order to see his new puppy.[6] The New Jersey legislature responded to this highly publicized event by declaring a legislative emergency to immediately debate and enact a sexual crimes bill.[7] On October 31, 1994, Governor Whitman signed the bill, which became known as Megan's Law.[8] N.J. Stat. Ann. 2C:7-1 *et seq.* The

---

4. *See* S.C.Code Ann. § 23–3–430(C) (sexual assault in the third degree is not an enumerated offense that requires registry).

5. Two other youths, Amanda Wengert and Divina Genao, were murdered in New Jersey by sexual criminals around the same time.

6. See Bill Alden, *"Megan's Law" Notification Provisions Enjoined,* 215 N.Y.L.J. 1 (col.3), (March 22, 1986); *State v. Williams,* 88 Ohio St.3d 513, 728 N.E.2d 342, 348 (2000).

7. *See* Sheila A. Campbell, *Battling Sex Offenders: Is Megan's Law an Effective Means of Achieving Public Safety?,* 19 Seton Hall Legis. J. 519, 535 (1995).

8. *See id.*

law requires sexual criminals to register with local law enforcement.

The United States Congress also reacted to the national outrage over sexual crimes by passing the Jacob Wetterling Crimes Against Children and Sexually Violent Predator Act ("Jacob Wetterling Act"), which President Clinton signed on September 13, 1994. Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program, 42 U.S.C.A. § 14071 (West 1994). The Jacob Wetterling Act gives states incentives to enact laws that protect the public from sexual criminals by conditioning federal funding under the Public Health and Welfare Code to state enactment of a sex crimes law. 42 U.S.C.A. § 14071(g)(1) and (g)(2). The Jacob Wetterling Act also creates a national sexual offender database, in which the states are required to participate. 42 U.S.C.A. § 14071(b)(2)(B).

By the time that the New Jersey legislature and Congress passed these laws, the South Carolina General Assembly had enacted its own Act, which became effective on July 1, 1994. S.C.Code Ann. §§ 23–3–400 *et seq.* The following types of sex criminals are placed on the registry:

(1) A South Carolina resident who has pled guilty or nolo contendere, or been convicted of a sex offense in this state; [9] in any other state; or in federal court; or

(2) A South Carolina resident who is registered on another state's sex offender registry; or

(3) A judge may order that a criminal be registered if good cause is shown.

S.C.Code Ann. § 23–3–430(A) and (D).

Appellant pled guilty to the Colorado crime of sexual assault in the third degree, which is not listed as a sex offense in S.C.Code Ann. § 23–3–430. Instead, Appellant was registered in South Carolina as committing Assault and Battery of a High and Aggravated Nature ("ABHAN"). The Act provides that the sentencing judge *may* order registration for this offense.[10] Appellant argues that registering him as commit-

---

**9.** For a list of enumerated sex offenses in South Carolina, *see* S.C.Code Ann. § 23–3–430(C)(1).

**10.** S.C.Code Ann. § 23–3–430(D) provides, "Upon conviction, adjudication of delinquency, guilty plea, or plea of nolo contendere of a person

ting ABHAN—a crime he technically did not commit—is "misleading" and deprives him of his right to equal protection.

## Equal Protection

 The equal protection clause of United States Constitution provides that "no state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1; *see also* S.C. Const. art. I, § 3. If a statutory provision "does not involve a suspect classification or a fundamental right, ... the question under equal protection analysis is whether the legislation is rationally related to a legitimate state purpose." *Curtis v. State,* 345 S.C. 557, 574, 549 S.E.2d 591, 600 (2001).[11]

 Appellant argues that the state has deprived him of his fundamental right to privacy,[12] and therefore that the court should apply the strict scrutiny analysis. *See Clark v. Jeter,* 486 U.S. 456, 461, 108 S.Ct. 1910, 1914, 100 L.Ed.2d 465, 471 (1988) (recognizing that strict scrutiny is applied to "classifications based on race or national origin, and classifications affecting fundamental rights"). Although the U.S. Supreme Court has recognized a right to privacy in limited circumstances, the privacy protections do not extend to information about a sexual offense Appellant committed in another state, which became a matter of public record when Appellant registered as a sex offender in Colorado. Accordingly, the Court need not apply a strict scrutiny analysis to this matter.

---

of an offense not listed in this article, the presiding judge may order as a condition of sentencing that the person be included in the sex offender registry if good cause is shown by the solicitor."

11. Appellant is not part of a suspect class. *See e.g., Cutshall v. Sundquist,* 193 F.3d 466, 483 (6th Cir.1999) (holding that convicted sex offenders are not a suspect class).

12. The Constitution of South Carolina specifically recognizes a right to privacy. S.C. Const. art. I § 10. The United States Supreme Court has recognized a constitutional right to privacy in various situations. *See Roe v. Wade,* 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147, 176–177 (1973) (finding that the constitutional right to privacy protects personal decisions "relating to marriage, procreation, contraception, family relationships, and child rearing and education").

Since the classification did not affect a fundamental right, this Court applies the "rational relationship" test in determining that the statute did not violate Appellant's right to equal protection. The scope of review should be limited "in cases involving a constitutional challenge to a statute because all statutes are presumed constitutional and, if possible, will be construed to render them valid." *Curtis*, 345 S.C. at 569, 549 S.E.2d at 597. Under this analysis, Appellant's classification as a sex offender in South Carolina is justified if

> (1) the classification bears a reasonable relation to the legislative purpose sought to be effected; (2) the members of the class are treated alike under similar circumstances and conditions; and (3) the classification rests on some reasonable basis.

*Id.* at 574, 549 S.E.2d at 599–600. The Act complies with the first prong of the test, as the legislative purpose is clearly defined:

> The intent of this article is to promote the state's fundamental right to provide for the public health, welfare, and safety of its citizens. Notwithstanding this legitimate state purpose, these provisions are not intended to violate the guaranteed constitutional rights of those who have violated our nation's laws.

> The sex offender registry will provide law enforcement with the tools needed in investigating criminal offenses. Statistics show that sex offenders often pose a high risk of reoffending. Additionally, law enforcement's efforts to protect communities, conduct investigations, and apprehend offenders who commit sex offenses are impaired by the lack of information about these convicted offenders who live within the law enforcement agency's jurisdiction.

S.C.Code Ann. § 23–3–400. Thus classifying Appellant as a sex offender is reasonably related to the legitimate state purpose of protecting the public and aiding law enforcement in limiting the risk that sex offenders pose to communities. *See Cutshall,* 193 F.3d at 482–483. Appellant's classification as a sex offender in South Carolina also comports with the second prong of the test because *all* persons who must register under the Act are subject to uniform administrative and legal proce-

dures regardless of which sexual offense they commit. *See* S.C.Code Ann § 23–3–450 through –490.

Appellant argues that his classification as a sex offender in South Carolina fails the third prong of the *Curtis* test because the state has no reasonable basis for asserting that he committed an ABHAN in South Carolina when the actual crime he pled guilty to was sexual assault in the third degree in Colorado. In our opinion, the state's action is reasonable because the purpose of the law is to protect the public welfare and to assist law enforcement in accomplishing that goal. Registering persons who committed crimes in another state when they move to South Carolina is a reasonable method of achieving this goal.[13] The state's classification of Appellant as a sex offender satisfies rational scrutiny and the *Curtis* test because Colorado deemed him a sex offender, and South Carolina gives comity to Colorado's adjudication. Therefore, the statute reasonably protects South Carolinians because the registry notifies them of Appellant's sex offense.

While we find that the state's registration of Hendrix as committing an ABHAN to be constitutional, we are troubled that the state incorrectly registered Hendrix as committing an ABHAN when in actuality, he pled guilty to sexual assault in the third degree as defined by statute.

We hold that when the South Carolina Law Enforcement Division ("SLED") registers a sex criminal due to his conviction of a sexual offense in another state, the agency must correctly state the offense the criminal committed in that jurisdiction. Accordingly, under the "Offense" heading on the registry, SLED should provide (1) the state where the offense was committed; (2) the citation of that state's statute that was violated; (3) the name of the crime committed; and (4) the date of conviction. For example, in this case, Appellant's offense would appear under the "Offense" heading as follows:

Colorado

---

13. S.C.Code Ann. § 23–4–430(A) provides: "Any person, regardless of age, residing in the state of South Carolina who ... has been convicted of, adjudicated delinquent for, pled guilty or nolo contendere to an offense for which the person was *required to register in the state where the conviction or the plea occurred,* shall be required to register pursuant to the provisions of this article." (emphasis added).

§ 18–3–404: Third Degree Sexual Assault
2000–03–08 [14]

We reserve for another day the question of whether Appellant's right of equal protection would be offended if his petition to be removed from the Colorado registry is granted, yet he remains on the South Carolina registry for life.

### Due Process

■ Appellant argues that the state violated his due process right because it deprived him of a liberty interest without a hearing. Appellant must first "show that he has a constitutionally protected liberty or property interest, and that he has been deprived of that protected interest by some form of state action." *Fleming v. Rose*, 338 S.C. 524, 539–540, 526 S.E.2d 732, 740 (Ct.App.2000), *rev'd on diff. grounds*, 350 S.C. 488, 567 S.E.2d 857 (2002).

Appellant asserted in his complaint that South Carolina enhanced his punishment because once a person is registered as a sex offender in this state, he must register annually for life. In Colorado, he can appeal to have his name removed from the registry after five years.[15] Appellant's argument fails because this Court has ruled that registering as a sex offender is a non-punitive imposition. *State v. Walls*, 348 S.C. 26, 31, 558 S.E.2d 524, 526 (2002). Therefore, the length of time one must be listed on the sex offender registry is non-punitive, and it cannot constitute a deprivation of a constitutionally protected liberty interest. As such, Appellant has not shown a due process violation.

### Conclusion

The state's listing of Appellant on the Sex Offender Registry has not violated his right to equal protection or due process. Accordingly, we **AFFIRM** the trial court's denial of injunctive relief.

---

14. At the time of Appellant's conviction, the crime was entitled sexual assault in the third degree. Colo.Rev.Stat. Ann. § 18–3–404 (West 1999). The statute was amended and effective July 1, 2000, the offense is called unlawful sexual contact. Colo.Rev.Stat. Ann. § 18–3–404 (West Supp.2001).

15. Colo.Rev.Stat. Ann. § 16–22–113 (West Supp.2002).

We also hold that when SLED registers a sex offender who committed a sex crime in another state, it must list under the "Offense" heading: (1) the state where the offense was committed; (2) the citation of that state's statute that was violated; (3) the name of the crime committed; and (4) the date of conviction.

MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.