799 S.E.2d 675

**IN the INTEREST OF JUSTIN B., a Juvenile
under the Age of Seventeen, Appellant.**

Appellate Case No. 2015-000992
Opinion No. 27716

Supreme Court of South Carolina.

Heard February 9, 2017
Filed May 3, 2017

576

John Brandt Rucker, of The Rucker Law Firm, L.L.C., of Greenville, for Appellant.

Attorney General Alan Wilson, Assistant Attorney General William M. Blitch Jr., both of Columbia; and Solicitor Barry J. Barnette, of Spartanburg, for Respondent.

JUSTICE FEW:

Justin B., a minor, was found delinquent for committing criminal sexual conduct with a minor in the first degree. The family court imposed the mandatory, statutory requirement that he register as a sex offender and wear an electronic monitor, both for life. Justin B. claims the mandatory imposition of lifetime registration and electronic monitoring on juveniles is unconstitutional. We affirm the family court.

## I. Facts and Procedural History

In April 2013, Justin B. was charged with criminal sexual conduct with a minor in the first degree under subsection 16-3-655(A)(1) of the South Carolina Code (2015). Justin B. was fifteen years old, and his victim was five. The family court conducted a hearing in January 2015. The State called the detective from the Spartanburg County Sheriff's Office who investigated the sexual assault complaint. The detective testified she met with Justin B. to discuss the allegations against him, and that he admitted to sexually assaulting the victim. Specifically, Justin B. admitted to putting his penis in the victim's mouth, putting the victim's penis in his mouth, and attempting to put his penis in the victim's anus.

The victim and his mother also testified. The victim—seven years old at the time of the hearing—testified Justin B. sexually assaulted him on several occasions in the manner described by the detective. The victim's mother testified that a friend called to report that the victim was caught showing the friend's son a "game" that involved sexual acts. She asked the victim about it and he told her Justin B. showed him this "game." The victim's mother then contacted the police.

The court found Justin B. committed criminal sexual conduct with a minor in the first degree, and declared him delinquent. The court imposed the mandatory, statutory requirement that Justin B. register as a sex offender and wear an electronic monitor for the remainder of his life. Justin B. objected to mandatory lifetime registration for juveniles on

the grounds it is unconstitutional. The court overruled the objection, stating this Court had already ruled on the issue. Justin B. appealed the family court's decision. The State then moved to certify the case for our review under Rule 204(b) of the South Carolina Appellate Court Rules, and we granted the motion.

## II. The Sex Offender Registry

In 1994, the Legislature enacted the South Carolina Sex Offender Registry Act. S.C. Code Ann. §§ 23-3-400 to -555 (2007 & Supp. 2016). The Act created the sex offender registry, which is maintained "under the direction of the Chief of the State Law Enforcement Division (SLED)." § 23-3-410(A) (2007). The purpose of the registry is set forth in section 23-3-400 (Supp. 2016), which provides,

The intent of this article is to promote the state's fundamental right to provide for the public health, welfare, and safety of its citizens.

. . . .

The sex offender registry will provide law enforcement with the tools needed in investigating criminal offenses. Statistics show that sex offenders often pose a high risk of re-offending. Additionally, law enforcement's efforts to protect communities, conduct investigations, and apprehend offenders who commit sex offenses are impaired by the lack of information about these convicted offenders who live within the law enforcement agency's jurisdiction.

Pursuant to subsection 23-3-410(A) (2007),

SLED shall develop and operate the registry to: collect, analyze, and maintain information; make information available to every enforcement agency in this State and in other states; and establish a security system to ensure that only authorized persons may gain access to information gathered under this article.

Section 23-3-430 provides any person—regardless of age—who is convicted or declared delinquent for criminal sexual conduct with a minor in the first degree must register as a sex offender. § 23-3-430(A), (C) (2007 & Supp. 2016). Subsection 23-3-490(D)(1)(c) (Supp. 2016) further provides the public may view who is registered for criminal sexual conduct with a

minor. Under section 23-3-460, Justin B. must register every ninety days for life. § 23-3-460(A), (B) (Supp. 2016).

Justin B. must also wear an electronic monitoring device. § 23-3-540(A) (Supp. 2016). The monitor utilizes a web-based computer system to actively monitor and record the sex offender's location at least once every minute twenty-four hours a day. § 23-3-540(P) (Supp. 2016). Under subsection 23-3-540(H), the sex offender must wear the electronic monitor for as long as he is on the registry, subject to judicial review. § 23-3-540(H) (Supp. 2016).

### III. Prior Decisions

As the family court indicated, we have already addressed many of the issues Justin B. raises in his challenge to the imposition of sex offender registration and electronic monitoring requirements. In *State v. Walls,* 348 S.C. 26, 558 S.E.2d 524 (2002), we considered whether the sex offender registry violated the *ex post facto* clauses of the state and federal constitutions. 348 S.C. at 29, 558 S.E.2d at 525. We stated, "For the *ex post facto* clause to be applicable, the statute or the provision in question must be criminal or penal in purpose and nature." 348 S.C. at 30, 558 S.E.2d at 526. We then held the sex offender registry did not violate the *ex post facto* clause because "it is clear the General Assembly did not intend to punish sex offenders, but instead intended to protect the public from those sex offenders who may re-offend and to aid law enforcement in solving sex crimes." 348 S.C. at 31, 558 S.E.2d at 526.

In *Hendrix v. Taylor,* 353 S.C. 542, 579 S.E.2d 320 (2003), we considered whether requiring a convicted Colorado sex offender to register in South Carolina violated the equal protection and due process clauses of the state and federal constitutions. 353 S.C. at 547, 579 S.E.2d at 322. As to the equal protection challenge, we found classifying an out-of-state sex offender as a sex offender in South Carolina "did not affect a fundamental right," and therefore we applied the "rational relationship" test. 353 S.C. at 550, 579 S.E.2d at 324. Under that test, a statutory classification will be constitutional if the "classification bears a reasonable relation to the legislative purpose," "the members of the class are treated alike

under similar circumstances and conditions," and "the classification rests on some reasonable basis." *Id.* (quoting *Curtis v. State,* 345 S.C. 557, 574, 549 S.E.2d 591, 600 (2001)). We held requiring an out of state offender to register in South Carolina was "reasonably related to the legitimate state purpose of protecting the public and aiding law enforcement in limiting the risk that sex offenders pose to communities." *Id.* As to the due process challenge, we followed our holding in *Walls* that the sex offender registry is non-punitive and did not implicate a liberty interest, and therefore held there was no due process violation. 353 S.C. at 552, 579 S.E.2d at 325 (citing *Walls,* 348 S.C. at 31, 558 S.E.2d at 526).

Later that year, we decided *In re Ronnie A.,* 355 S.C. 407, 585 S.E.2d 311 (2003), in which an eleven-year-old challenged the mandatory lifetime registration requirement after he was found to have committed criminal sexual conduct with a minor. We followed *Hendrix,* and held "sex offender registration, regardless of the length of time, is non-punitive and therefore no liberty interest is implicated." 355 S.C. at 409, 585 S.E.2d at 312 (citing *Hendrix,* 353 S.C. at 552, 579 S.E.2d at 325).

We reiterated our holding in *Walls* that the legislative purpose for the sex offender registry "is to protect the public from those offenders who may re-offend." *Id.* (citing *Walls,* 348 S.C. at 31, 558 S.E.2d at 526). We then concluded, "The registration of offenders, including juveniles who have proved themselves capable of certain sex offenses, is rationally related to achieving this legitimate objective. Appellant has offered no valid basis upon which to distinguish juvenile sex offenders for purposes of due process." 355 S.C. at 409-10, 585 S.E.2d at 312.

Finally, we considered an Eighth Amendment challenge to the section 23-3-540 requirement that juveniles submit to electronic monitoring for life in *In re Justin B.,*[1] 405 S.C. 391, 747 S.E.2d 774 (2013). We held "the General Assembly intended section 23-3-540 as a civil scheme for the protection of the public." 405 S.C. at 405, 747 S.E.2d at 781. We concluded, "Section 23-3-540's electronic monitoring scheme bears a clear and rational connection to a non-punitive purpose," and stated "the continuous monitoring of these offenders supports the

---

1. The appellants in the two cases are not related.

General Assembly's valid purpose of aiding law enforcement in the protection of the community." 405 S.C. at 407, 747 S.E.2d at 782-83. We held, however, "sex offenders ... are entitled to 'avail themselves of the section 23-3-540(H) judicial review process.'" 405 S.C. at 408, 747 S.E.2d at 783 (quoting *State v. Dykes*, 403 S.C. 499, 510, 744 S.E.2d 505, 511 (2013)).

## IV.  Analysis

Justin B. raises one issue on appeal: whether "the mandatory placement of juveniles convicted of certain [sex] crimes on the South Carolina sex offender registry is unconstitutional." Beginning with *Walls,* and continuing through *Hendrix, Ronnie A., Dykes,* and *Justin B.,* we upheld the constitutionality of the mandatory lifetime sex offender registry requirement with electronic monitoring for adults and juveniles. However, Justin B. makes four arguments that his constitutional challenge should be decided differently. First, he argues our constitutional analysis will yield a different result under the reasoning of *Roper v. Simmons,* 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005). Second, he argues the mandatory lifetime registration of juvenile sex offenders violates the doctrine of *parens patriae.* Third, he argues mandatory lifetime registration of juvenile sex offenders conflicts with the purpose of the South Carolina Children's Code. Finally, Justin B. argues his case is distinguishable from cases we have previously decided because his registration is viewable by the public. We address each argument in turn.

### A.  *Roper v. Simmons*

◼ Justin B. argues we should reconsider our prior decisions in light of *Roper v. Simmons.* He argues our Legislature did not consider the differences between juveniles and adults when it created the sex offender registry, and uses the discussion of these differences in *Roper* to support his argument. He further argues these differences establish the "valid basis upon which to distinguish juvenile sex offenders for purposes of due process," which we held was not present in *Ronnie A. See* 355 S.C. at 409-10, 585 S.E.2d at 312 ("Appellant has offered no valid basis upon which to distinguish juvenile sex offenders for purposes of due process."). We disagree.

*Roper* was a death penalty case in which the Supreme Court of the United States considered whether it is permissible to execute a juvenile under the Eighth and Fourteenth Amendments to the United States Constitution. 543 U.S. at 555-56, 125 S.Ct. at 1187, 161 L.Ed.2d at 13. In holding the execution of juveniles was unconstitutional, the *Roper* Court observed three general differences between juveniles and adults. First, juveniles exhibit "[a] lack of maturity and an underdeveloped sense of responsibility." 543 U.S. at 569, 125 S.Ct. at 1195, 161 L.Ed.2d at 21. Second, "juveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure." 543 U.S. at 569, 125 S.Ct. at 1195, 161 L.Ed.2d at 22. Third, "the character of a juvenile is not as well formed as that of an adult. The personality traits of juveniles are more transitory, less fixed." 543 U.S. at 570, 125 S.Ct. at 1195, 161 L.Ed.2d at 22. The Court examined the two social purposes served by the death penalty—retribution and deterrence—and determined these "penological justifications for the death penalty apply to [juveniles] with lesser force than to adults." 543 U.S. at 571-72, 125 S.Ct. at 1196, 161 L.Ed.2d at 23. The *Roper* Court explained retribution is not properly served "if the law's most severe penalty is imposed on one whose culpability or blameworthiness is diminished, to a substantial degree, by reason of youth and immaturity." 543 U.S. at 571, 125 S.Ct. at 1196, 161 L.Ed.2d at 23. As to deterrence, the *Roper* court found "the same characteristics that render juveniles less culpable than adults suggest as well that juveniles will be less susceptible to deterrence." *Id.*

We are not persuaded by the argument that *Roper* should change our analysis of the constitutionality of mandatory juvenile sex offender registration. Unlike the death penalty— the ultimate punishment—the sex offender registry is a "nonpunitive act." *See supra,* discussion of *Walls, Hendrix, Ronnie A., Dykes,* and *Justin B.* The purpose of the sex offender registry has nothing to do with retribution, and any deterrent effect of registration derives from the availability of information, not from punishment. Instead, the purpose of the registry and the electronic monitoring requirement is to protect the public and aid law enforcement. We defer to the Legislature's determination that these purposes are equally served by requiring registration of adults and juveniles. *Roper* does not

change our view that requiring registration for life by juvenile sex offenders rationally relates to the Legislature's purpose of protecting the public and assisting law enforcement. *See Justin B.*, 405 S.C. at 407, 747 S.E.2d at 782 (decided eight years after *Roper*, and holding lifetime electronic monitoring for juveniles is not cruel and unusual punishment under the Eighth Amendment because it "bears a clear and rational connection to a non-punitive purpose").

## B. *Parens Patriae* Doctrine

■ Justin B. also argues mandatory lifetime registration for juvenile offenders contradicts the State's duty to protect its children under the doctrine of *parens patriae*.[2] We disagree.

Originally, *parens patriae* referred to the king's power as "general trustee[ ] of the kingdom." *See Hays v. Harley*, 8 S.C.L. 267, 268 (1817). Beginning in the early twentieth century, this Court began using the term *parens patriae* to describe the State's power and responsibility to protect and safeguard the welfare of children. *See State v. Cagle*, 111 S.C. 548, 552, 96 S.E. 291, 292 (1918) ("The State is vitally interested in its youth, for in them is the hope of the future. It may therefore exercise large powers in providing for their protection and welfare," and, "We have no doubt of the general power of the state, as *parens patriae*, to make and enforce reasonable laws looking to the education, welfare, and protection of its youth."). That idea is now reflected in the legislative policy of the South Carolina Children's Code. *See In re Stephen W.*, 409 S.C. 73, 78-79, 761 S.E.2d 231, 233-34 (2014) (discussing the doctrine of *parens patriae* and the Children's Code).

We are not persuaded by Justin B.'s argument that mandatory lifetime registration and electronic monitoring requirements are inconsistent with the State's duty to protect its children under the doctrine of *parens patriae*. First, and most importantly, this is not a constitutional argument. The doctrine has become a legislative policy, and not a basis on which we will strike down statutes as unconstitutional. *See Cagle*, 111

---

**2.** *Parens patriae* means "the state in its capacity as provider of protection to those unable to care for themselves." *Parens Patriae*, BLACK'S LAW DICTIONARY (10th ed. 2014).

S.C. at 552, 96 S.E. at 292 (noting the doctrine allows the State to "to make and enforce reasonable laws looking to the education, welfare, and protection of its youth"); *Bradey v. Children's Bureau*, 275 S.C. 622, 625-26, 274 S.E.2d 418, 420 (1981) (discussing the State's role as *parens patriae* in enacting adoption statutes).[3] The manner in which the State should implement the policy behind the doctrine of *parens patriae* is a question for the Legislature, not the courts.

Second, the *parens patriae* doctrine was well-established at the time of our previous decisions concerning juveniles and the sex offender registry, *Ronnie A.* (2003) and *Justin B.* (2013). There have been no developments or changes in the doctrine that counsel us to depart from our previous decisions.

Finally, Justin B. attempts to apply the doctrine of *parens patriae* too narrowly. The State's policy of protecting its children involves more than protecting juvenile sex offenders. The legislative purpose of sex offender registration is to protect our citizens, including children, who are often the victims of sexual assault crimes. Thus, the sex offender registry is *itself* an exercise of the State's broad powers to protect its children under the *parens patriae* doctrine.

### C. Conflicts with the Children's Code

██  Next, Justin B. argues the mandatory lifetime registration provisions of the sex offender registry conflict with the purpose of the South Carolina Children's Code. For the same reasons we rejected his *parens patriae* argument—including that this is not a constitutional argument—we reject this argument. The Legislature intended that registration and electronic monitoring would apply to juveniles. This is evident by the plain language of Sex Offender Registry Act, which includes the phrases "[a]ny person, regardless of age" and "adjudicated delinquent" in section 23-3-430(A), and the phrase "adjudication of delinquency" in section 23-3-540(A). The fact the Legislature chose to treat juveniles the same as adults in requiring registration for committing sex offenses, but to treat them differently in the punishment of ordinary

---

**3.** *See also* Douglas R. Rendleman, *Parens Patriae: From Chancery to the Juvenile Court*, 23 S.C. L. Rev 205, 222-23 (1971) (discussing the history of the *parens patriae* doctrine and noting early courts "defined the Latin phrase as coexistent with the general legislative power to regulate").

offenses, is the Legislature's prerogative—so long as the Legislature's action is rationally related to its purpose. It is not a basis on which we will declare a statute unconstitutional.

### D. Distinguishable from *Ronnie A.*

■ Finally, Justin B. attempts to distinguish his case from *Ronnie A.* on the ground that his registry information will be available to the public, while Ronnie A.'s information was only available to law enforcement. *See* S.C. Code Ann. § 23-3-490(D)(3) (Supp. 2016) (providing registration of individuals under twelve years of age shall not be made available to the public). In *Ronnie A.*, we stated, "since the registry information will not be made available to the public because of appellant's age at the time of his adjudication, there is no undue harm to his reputation even if we were to recognize a liberty interest in a juvenile's reputation." 355 S.C. at 410, 585 S.E.2d at 312.

Justin B.'s age and the resulting public registration does not change our constitutional analysis. The Supreme Court held that an adult does not have a constitutionally protected liberty interest in his reputation. *See Paul v. Davis*, 424 U.S. 693, 712, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405, 420 (1976) (stating an "interest in reputation ... is neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law"). A delinquent juvenile's reputation may be in greater need of protection than the reputation of an adult convicted of a felony sex crime, but the juvenile's interest in that reputation is still neither liberty nor property. The responsibility of balancing the need to protect a juvenile's reputation against the need to "to promote the state's fundamental right to provide for the ... safety of its citizens," § 23-3-400, falls to the Legislature, not the courts, S.C. CONST. art. I, § 8.

### V. Conclusion

The requirement that adults and juveniles who commit criminal sexual conduct must register as a sex offender and wear an electronic monitor is not a punitive measure, and the requirement bears a rational relationship to the Legislature's purpose in the Sex Offender Registry Act to protect our citizens—including children—from repeat sex offenders. The

requirement, therefore, is not unconstitutional. If the requirement that juvenile sex offenders must register and must wear an electronic monitor is in need of change, that decision is to be made by the Legislature—not the courts. The decision of the family court to follow the mandatory, statutory requirement to impose lifetime sex offender registration and electronic monitoring on Justin B. is **AFFIRMED**.

KITTREDGE, J., and Acting Justice Thomas Anthony Russo, Sr., concur.

BEATTY, C.J. and HEARN, J., concur in result only.