# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

David Wilkins Ross, Appellant.

Appellate Case No. 2016-000738

―――――――――

Appeal from Greenville County
Robin B. Stilwell, Circuit Court Judge

―――――――――

Opinion No. 27815
Heard March 6, 2018 – Filed June 13, 2018

―――――――――

## REVERSED AND REMANDED

―――――――――

Appellate Defender LaNelle Cantey DuRant, of Columbia, for Appellant.

Matthew C. Buchanan, South Carolina Department of Probation, Parole and Pardon Services, of Columbia, for Respondent.

―――――――――

**JUSTICE FEW:** David Wilkins Ross pled guilty in 1979 to lewd act upon a child. Thirty-two years later, he was convicted in magistrate's court of misdemeanor failure to register as a sex offender. Ross argues the automatic imposition of lifetime electronic monitoring required by subsection 23-3-540(E) of the South Carolina Code (Supp. 2017) as a result of his failure to register is an unreasonable search under the Fourth Amendment. Addressing only this particular subsection of 23-3-540, we agree. We reverse the circuit court's order automatically imposing electronic monitoring, and remand for an individualized inquiry into whether the imposition of monitoring in Ross's circumstances is reasonable under the Fourth Amendment.

## I.    Facts and Procedural History

When Ross pled guilty to lewd act upon a child in 1979, the trial court—the late Honorable Frank Eppes—sentenced Ross to six years in prison, but suspended all of the active prison time upon Ross's successful service of five years of probation.  Less than two years later, Judge Eppes revoked Ross's probation for being convicted of alcohol-related offenses in municipal court.  His conviction for lewd act—which is now reclassified as criminal sexual conduct (CSC) with a minor in the third degree[1]—is the only sexual offense of which Ross has been convicted.

In 1994, our General Assembly enacted the Sex Offender Registry Act.  *See* S.C. Code Ann. §§ 23-3-400 to -555 (2007 & Supp. 2017).  Subsection 23-3-430(A) (2007) provides, "Any person, regardless of age, residing in the State of South Carolina who in this State . . . pled guilty . . . to an offense described below, . . . shall be required to register" as a sex offender.  Subsection 23-3-430(C)(6) includes "criminal sexual conduct with minors, third degree" as an offense requiring registration.  "A person required to register pursuant to this article is required to register biannually for life."  § 23-3-460(A) (Supp. 2017).

Ross was convicted in 2011 in magistrate court for failing to register.  *See* § 23-3-470(A) (Supp. 2017) ("If an offender fails to register . . . , he must be punished as provided in subsection (B)."); § 23-3-470(B)(1) ("A person convicted for a first offense is guilty of a misdemeanor . . . .").  The details of Ross's failure to comply with subsection 23-3-470(A) are not in the record.

Under subsection 23-3-540(E), the automatic, mandatory consequence of Ross's failure to register is lifetime electronic monitoring.  In particular, subsection 23-3-540(E) provides,

> A person who is required to register pursuant to this article
> for committing . . . criminal sexual conduct with a minor
> in the third degree, . . . and who violates a provision of this
> article, must be ordered by the court to be monitored by

---

[1] In 1979, the crime of lewd act upon a child was codified in section 16-15-140 of the South Carolina Code (1976) (repealed 2012).  CSC with a minor in the third degree is codified in subsection 16-3-655(C) of the South Carolina Code (2015).

the Department of Probation, Parole and Pardon Services
with an active electronic monitoring device.

To enforce this requirement, the Department brought an action in circuit court seeking an order to place Ross on electronic monitoring. At the hearing before the circuit court, Ross argued automatic, mandatory electronic monitoring pursuant to subsection 23-3-540(E) is an unconstitutional search under the Fourth Amendment. Ross argued the "must be ordered" language in subsection 23-3-540(E) prohibits the court from considering his unique circumstances, which in turn renders the required electronic monitoring unreasonable. *See Samson v. California*, 547 U.S. 843, 848, 126 S. Ct. 2193, 2197, 165 L. Ed. 2d 250, 256 (2006) (stating the Fourth Amendment requires courts to "'examin[e] the totality of the circumstances' to determine whether a search is reasonable" (alteration in original) (quoting *United States v. Knights*, 534 U.S. 112, 118, 122 S. Ct. 587, 591, 151 L. Ed. 2d 497, 505 (2001))). To support his argument, Ross presented expert testimony from Dr. William Burke, whom the circuit court qualified as an expert in "psychosexual evaluation and treatment." Dr. Burke testified he evaluated Ross and determined he is in the "lowest category of risk" of reoffending.

The circuit court disagreed with Ross and found that an order placing Ross on electronic monitoring was automatic and mandatory under subsection 23-3-540(E). Ross appealed to the court of appeals. We certified the case for our review pursuant to Rule 204(b) of the South Carolina Appellate Court Rules.

## II.     Fourth Amendment

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV; *see also* S.C. CONST. art. I, § 10. In *Grady v. North Carolina*, 575 U.S. ___, 135 S. Ct. 1368, 191 L. Ed. 2d 459 (2015), the Supreme Court of the United States clarified that electronic monitoring of sex offenders is a "search" under the Fourth Amendment. 575 U.S. at ___, 135 S. Ct. at 1370, 191 L. Ed. 2d at 461-62. The Court held "a State . . . conducts a search when it attaches a device to a person's body, without consent, for the purpose of tracking that individual's movements." 575 U.S. at ___, 135 S. Ct. at 1370, 191 L. Ed. 2d at 461-62. For any search, "The ultimate standard set forth in the Fourth Amendment is reasonableness." *Cady v. Dombrowski*, 413 U.S. 433, 439, 93 S. Ct. 2523, 2527, 37 L. Ed. 2d 706, 713 (1973). As the Court stated in *Grady*, "The Fourth Amendment prohibits only *unreasonable* searches. The reasonableness of a search depends on

the totality of the circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations."  575 U.S. at ___, 135 S. Ct. at 1371, 191 L. Ed. 2d at 462.

## A.    Electronic Monitoring under the Sex Offender Registry

Section 23-3-400 (Supp. 2017) sets forth the purpose of the sex offender registry: "to provide for the public health, welfare, and safety of its citizens" and "provide law enforcement with the tools needed in investigating criminal offenses."  As part of the sex offender registry, the General Assembly created a comprehensive scheme for electronic monitoring of certain sex offenders through the use of "an active electronic monitoring device."  There are three different categories of events that trigger the electronic monitoring requirement.  Persons newly convicted of sex offenses are governed by subsections 23-3-540(A) and (B);[2] persons who violate probation, parole, or community supervision are governed by subsections 23-3-540(C) and (D);[3] and persons who violate the provisions of the registry itself are governed by subsections 23-3-540(E) and (F).  When the underlying crime is CSC with a minor in the first or third degree, the electronic monitoring requirement is automatic and mandatory.  § 23-3-540(A), (C), and (E).  For all other offenses,[4] the court "may" impose the electronic monitoring requirement.  § 23-3-540(B), (D), and (F).  The "active electronic monitoring device" required by section 23-3-540 uses "a web-based computer system that actively monitors and records a person's location at least once every minute twenty-four hours a day and that timely records and reports the person's presence near or within a prohibited area or the person's departure from a specified geographic location."  § 23-3-540(P).

## B.    The Reasonableness of the Search

---

[2] *See, e.g.*, *In Interest of Justin B.*, 419 S.C. 575, 580, 799 S.E.2d 675, 677 (2017) (observing that upon conviction for CSC with a minor in the first degree, the defendant "must . . . wear an electronic monitoring device" pursuant to subsection 23-3-540(A)).

[3] *See, e.g.*, *State v. Nation*, 408 S.C. 474, 478, 759 S.E.2d 428, 430 (2014) (defendant who violated probation for CSC with a minor in the third degree placed on electronic monitoring pursuant to subsection 23-3-540(C)).

[4] The other sexual offenses are listed in subsection 23-3-540(G).

The State argues the automatic, mandatory requirement of electronic monitoring—triggered by Ross's failure to register in 2011—is reasonable under the Fourth Amendment, and "the trial court in this case did not need to conduct an individual assessment of reasonableness to order [Ross] to be electronically monitored." The State relies primarily on this Court's decision in *State v. Dykes*, 403 S.C. 499, 744 S.E.2d 505 (2013), in which we considered a Fourth Amendment challenge to automatic, mandatory electronic monitoring triggered pursuant to a different subsection—23-3-540(C)—by the offender's violation of her probation. 403 S.C. at 510 n.9, 744 S.E.2d at 511 n.9. While we upheld the requirement of electronic monitoring in *Dykes*, the situation we faced there was vastly different from the situation here. First, the primary legal challenge to electronic monitoring in *Dykes* was based on due process. 403 S.C. at 505, 744 S.E.2d at 508. We addressed the Fourth Amendment challenge only in a footnote, and only in the nature of a "memorandum" opinion pursuant to Rule 220 of the South Carolina Appellate Court Rules. 403 S.C. at 510 n.9, 744 S.E.2d at 511 n.9. Rule 220(a) specifically provides "memorandum opinions . . . shall be of no precedential value."[5]

Second—and more importantly—the factual and legal context of our decision in *Dykes* was completely different. After the defendant pled guilty to lewd act upon a child, the court sentenced her to fifteen years in prison, but partially suspended the fifteen year term upon the service of three years of active prison time followed by five years of probation. 403 S.C. at 503, 744 S.E.2d at 507. The question of automatic, mandatory electronic monitoring arose after the defendant served the active portion of her prison sentence, and then "violated her probation in multiple respects," which triggered electronic monitoring under subsection 23-3-540(C). *Id.* The fact the defendant was on probation when the court imposed electronic monitoring is important. Probation is considered "an act of grace" given to a person

---

[5] In fairness to the circuit court here, we have previously indicated *Dykes* is precedential. *See Nation*, 408 S.C. at 479, 759 S.E.2d at 430-31 (addressing a similar challenge based on "the Fourth Amendment's prohibition on unreasonable searches and seizures" and stating we "explicitly rejected" the argument in *Dykes*, and affirming imposition of automatic, mandatory electronic monitoring pursuant to subsection 23-3-540(C)). We now clarify that rulings by our appellate courts in the nature of a memorandum opinion pursuant to Rule 220(b)(1), even when made within the body of a published opinion that is otherwise binding precedent, "shall be of no precedential value."

who is still serving the sentence of the court, and "the revocation of this privilege of probation is more in the nature of an extension of the original proceedings." *State v. Franks*, 276 S.C. 636, 638, 281 S.E.2d 227, 228 (1981). In addition, section 24-21-410 of the South Carolina Code (Supp. 2017) provides, "Probation is a form of clemency," and, "Before a defendant may be placed on probation, he must agree in writing to be subject to a search or seizure, without a search warrant, based on reasonable suspicions, of the defendant's person." In *Knights*, the Supreme Court of the United States found a similar condition of probation "salient" in reaching its conclusion that a warrantless search of a probationer was reasonable. 534 U.S. at 118, 122 S. Ct. at 591, 151 L. Ed. 2d at 505; *see also Samson*, 547 U.S. at 857, 126 S. Ct. at 2202, 165 L. Ed. 2d at 262 (finding "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee").

Ross, on the other hand, was not on probation, and thus no longer under the jurisdiction of the sentencing court when he was ordered to be placed on electronic monitoring for his failure to register. In fact, Ross was ordered to be placed on electronic monitoring thirty-six years after his conviction, and at least twenty-nine years after he completed serving his punishment for that crime.[6] Also, Ross has not been convicted of any sexual offense since 1979.

The situation in *Dykes* is also different because of the consistent circumstances the court will face under subsection 23-3-540(C) compared to the widely varying circumstances it will face under subsection 23-3-540(E). In every case in which electronic monitoring is imposed pursuant to subsection 23-3-540(C), the defendant will have been on conditional release from the original sentence through probation, parole, or community supervision. However, the circumstances leading up to the imposition of electronic monitoring pursuant to subsection 23-3-540(E) will vary widely on a case-by-case basis.

To illustrate the likelihood that a relatively innocent technical failure to register may lead to automatic, mandatory electronic monitoring pursuant to subsection 23-3-540(E), we will analyze what the law specifically requires for the registration itself. The analysis actually begins with the federal Sex Offender Registration and

---

[6] Ross was sentenced to probation in 1979 and began serving a six-year probation revocation sentence in late 1980. The circuit court entered its order requiring lifetime electronic monitoring on November 23, 2015.

Notification Act (SORNA).  *See* 34 U.S.C.S. §§ 20901 to 20991 (LexisNexis 2018).[7] Pursuant to subsection 20912(a), "Each jurisdiction shall maintain a jurisdiction-wide sex offender registry conforming to the requirements of this subchapter." South Carolina enacted the Sex Offender Registry Act.  Pursuant to section 23-3-420, the State Law Enforcement Division (SLED) has "promulgate[d] regulations to implement the provisions" of the federal and state registration requirements, and pursuant to section 23-3-530, SLED has developed a "protocol manual" for registration.  *See* S.C. Code Ann. Regs. 73-200 to -270 (2012).

SORNA, our Sex Offender Registry Act, and SLED regulations together impose appropriately technical requirements an offender must meet in completing his registration to accomplish the purposes of the registry.  For example, subsection 20913(c) of SORNA requires,

> A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry.

Similarly, section 23-3-460 of the Sex Offender Registry Act requires an offender to notify his local sheriff of any such changes "within three business days."  *See* § 23-3-460(C) (offender who moves residences within the same county must notify sheriff of the change of address within three business days); *id.* (offender who acquires real property, accepts employment, or becomes affiliated with any school must register within three business days); § 23-3-460(D) (offender who moves to a new county must register within three business days); § 23-3-460(E) (offender who is affiliated with any school must notify sheriff of a change of status within three business days); § 23-3-460(F) (offender who moves outside of South Carolina must notify sheriff of the change of address within three business days); § 23-3-460(G) (offender who moves to South Carolina and establishes a residence, acquires real property, accepts employment, or becomes affiliated with any school must register within three business days).

---

[7] SORNA was previously codified in 42 U.S.C. §§ 16901 to 16991 (2012 & Supp. 2016), but was re-codified in Title 34 in September 2017.

Section 23-3-450 requires "the offender must provide information as prescribed by SLED," and SLED regulation 73-260 requires twenty-three separate items of information. We can readily imagine a scenario in which an offender commits a purely technical violation of section 23-3-450 or section 23-3-460. Such a violation would nevertheless subject him to conviction under subsection 23-3-470(A), and if he is convicted, require electronic monitoring under subsection 23-3-540(E). Such a scenario[8] would appear to be a significantly different indicator of the likelihood of reoffending than a non-technical failure, such as an intentional refusal to register by an offender who moves to a neighborhood heavily populated by children. *See Dykes*, 403 S.C. at 507, 744 S.E.2d at 510 (stating "a likelihood of re-offending lies at the core" of our sex offender registry).

We believe this discussion of the widely varying circumstances that may lead to automatic, mandatory electronic monitoring imposed for failure to register demands an individualized inquiry into the reasonableness of the search in every case. The State argues, however, that the statute itself reflects an individualized analysis in the General Assembly's decision to separate out the various triggering events and different underlying crimes in the subsections of 23-3-540. This is a compelling argument, as the Supreme Court in *Grady* specifically referred to "the ultimate question of the *program's* constitutionality" and noted, "The North Carolina courts did not examine whether the State's monitoring *program* is reasonable." 575 U.S. at ___, 135 S. Ct. at 1371, 191 L. Ed. 2d at 463 (emphasis added). At first glance, the Court's focus on the "program"—rather than the circumstances of the individual search—seems to support the State's argument. However, the *Grady* Court also stated, "The reasonableness of a search depends on the totality of the circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations." 575 U.S. at ___, 135 S. Ct. at 1371, 191 L. Ed. 2d at 462.

This statement draws us to the differences between subsection 23-3-540(E) and the North Carolina law under which Grady was subjected to electronic monitoring.

---

[8] For example, the term "business days" in subsection 20913(c) and section 23-3-460 is not defined, and neither addresses whether a change of "employment" occurs on the date of hire or the date work begins. While we are hopeful and confident that local registration officials endeavor to avoid catching an offender in a purely technical violation, an offender's innocent miscalculation of either of these variables could potentially lead to automatic, mandatory electronic monitoring.

Grady was classified as a "recidivist," *see* 575 U.S. at ___, 135 S. Ct. at 1369, 191 L. Ed. 2d at 460, a classification that does not specifically exist in South Carolina, but closely resembles our subsections 23-3-540(A) and (C).  There is no provision under the North Carolina law for automatically imposing mandatory electronic monitoring under the circumstances for which subsection 23-3-540(E) requires it. *See* N.C. Gen. Stat. Ann. § 14-208.11 (2017) (providing a person who "willfully" fails to register is guilty of a felony); *see also* N.C. Gen. Stat. Ann. § 14-208.40 (2017) (listing three categories of persons who are subject to electronic monitoring, none of which includes persons who fail to register).  Given the wide variety of circumstances that may lead to the requirement of electronic monitoring under subsection 23-3-540(E), we find a review of only the program itself is not an adequate review for reasonableness under the Fourth Amendment.

Turning to Ross's arguments, he contends the mandatory language in subsection 23-3-540(E)—"must be ordered by the court"—renders the subsection itself unconstitutional, thus prohibiting even the individualized consideration of reasonableness in his case.  We disagree.  Such an interpretation would be contrary to the General Assembly's expression of intent section 23-3-400 that "these provisions are not intended to violate the guaranteed constitutional rights of those who have violated our nation's laws."  In light of this clear statement of intent, we find it necessary to overlay the protections of the Fourth Amendment onto the provisions of subsection 23-3-540(E).  *See Joytime Distributors & Amusement Co. v. State*, 338 S.C. 634, 640, 528 S.E.2d 647, 650 (1999) ("All statutes are presumed constitutional and will, if possible, be construed so as to render them valid.").

Therefore, we find electronic monitoring under subsection 23-3-540(E) "must be ordered by the court" only after the court finds electronic monitoring would not be an unreasonable search based on the totality of the circumstances presented in an individual case.  Further guidance on what is and is not reasonable must necessarily wait until we are presented with a full factual record.

## III.      Conclusion

We emphasize that our decision in this case is precedential only in cases in which the State requests the imposition of electronic monitoring pursuant to subsection 23-3-540(E).  The circuit court's order imposing electronic monitoring on Ross is **REVERSED** and the case is **REMANDED** to the circuit court for further proceedings consistent with this opinion.

**KITTREDGE, HEARN and JAMES, JJ., concur.  BEATTY, C.J., concurring in result only.**